Edmund J. LEWIS, M.D., individually and as Trustee for Edmund J. Lewis, M.D. & Associates, S.C. Defined Benefit Pension Trust, Edmund J. Lewis, M.D. & Associates, S.C., an Illinois corporation, and American Medical Supply Corporation, an Illinois corporation, Plaintiffs,

v.

Richard C. HERMANN, R.C. Hermann & Associates, C.P.A., Traverse Realty and Development Corporation, an Illinois corporation, Charles J. Richards, River North Securities Corporation, an Illinois corporation, Much Shelist, Freed, Denenberg, Ament & Eiger, P.C., Schwartz & Freeman, and Long Grove Trading Co., Defendants.

No. 89 C 04576.

United States District Court, N.D. Illinois, E.D.

Sept. 17, 1991.

Lawrence R. Samuels, Patrick John Ahern, Robert J. Pristave, Ross & Hardies, P.C., Chicago, Ill., for plaintiffs.

Joel F. Handler, Clifford E. Yuknis, Barry B. Gross, Tami J. Diamond, Shefsky & Froelich, Ltd., George A. Zelos, Gary Kostow, Richard M. Kaplan, Clausen, Miller, Gorman, Caffrey & Witous, P.C., Steven

Novack, Donald A. Tarkington, Novack & Macey, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

In June 1989, Dr. Edmund J. Lewis, individually and as a Trustee for Edmund J. Lewis, M.D. & Associates, S.C. defined Benefit Pension Trust ("Lewis Trust"), Edmund J. Lewis, M.D. & Associates, S.C., and the American Medical Supply Corporation (hereafter collectively referred to as "Lewis") brought this multi-count action against Richard C. Hermann, R.C. Hermann & Associates, Traverse Realty & Development Corporation ("Traverse Realty"), Charles J. Richards, and River North Securities Corporation ("River North"). In June 1990, the plaintiffs amended their complaint to add counts against three new defendants, Long Grove Trading Company ("Long Grove"), Much Shelist, Freed, Denenberg, Ament & Eiger, P.C. ("Much Shelist"), and Schwartz & Freeman ("S & F").

Currently pending are several motions. Richards and River North (hereafter collectively referred to as "Richards") have moved to dismiss Counts I through VII. Hermann, R.C. Hermann & Associates, and Traverse (hereafter collectively referred to as "Hermann") have moved to dismiss Counts I and III through VII. Long Grove, Much Shelist, and S & F have moved to dismiss Counts XI, XII, and XIII, respectively. In addition, Lewis has moved to strike portions of Hermann's answer to Count X and has moved for judgment on the pleadings on Count X. For the following reasons, we grant the motions in part and we deny them in part.

### I. Background [1]

■ Lewis' complaint seeks recovery based on a variety of alleged transgressions by each of the defendants in connection with Lewis' purchase of interests in several real estate investments. The complaint claims statutory violations under federal securities laws, ERISA, Illinois securities laws, and the Illinois Consumer Fraud and Deceptive Business Practices Act. The complaint also presents claims for common law fraud, breach of fiduciary duty, negligent misrepresentation, accountant's negligence, trover and conversion, and an action on a guaranty. The allegations pertinent to the motions to dismiss are as follows.

### A. Allegations Concerning Richards and Hermann

From 1982 to 1986, Hermann served in varying capacities as bookkeeper, collection agent, accountant and financial consultant for Lewis, both in his individual capacity and in his capacity as Trustee for the Lewis Trust. During this time, Hermann arranged, either directly or through Richards, to have Lewis invest his funds and the funds of the Lewis Trust in five real estate limited partnerships. In 1981, Hermann recommended that Lewis invest in La Villita Investors, Beta ("La Villita"). In early 1984, Richards recommended that Lewis invest funds in Metro Partners. In mid–1985, Richards recommended that Lewis invest in serial notes issued by Houston Land Investors, Ltd. ("Houston Land"). Also in 1985, Hermann recommended that Lewis invest in Pueblo Villas Investors ("Pueblo Villas"). Finally, in August 1986 Richards recommended that Lewis purchase serial notes for and a limited partnership interest in Metro Uptown Investors, Ltd. ("Metro Uptown"). The precise dates as to when Lewis actually purchased his interests in these entities has not been alleged. With the exception of Houston Land, Hermann was a general partner of each of the limited partnerships.

According to the complaint, the status of these investments is as follows. La Villita has made a distribution of "only $414.90" on Lewis' $27,660 investment. By a letter dated January 25, 1989, the general part-

---

1. A motion to dismiss should not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *Plumbers' Pension Fund, Local 130 v. Niedrich,* 891 F.2d 1297, 1299 (7th Cir.1989). "The well pleaded factual allegations and all reasonable inferences which follow from the allegations must be taken as true." *Plumbers'* at 1299. Thus, for the purposes of the motions to dismiss, we accept the facts alleged in the complaint as true.

ners indicated to the limited partners that La Villita will be forced to default on the loan it received to purchase property or file for bankruptcy if additional contributions are not made by the limited partners. Neither Metro Partners, Houston Land, Pueblo Villas nor Metro Uptown has made any distributions to its limited partners. On April 29, 1988, Metro Partners filed a voluntary petition for reorganization under Chapter 11 of the federal bankruptcy code; these proceedings are still pending. On September 2, 1988, Houston Land filed for a Chapter 11 reorganization; the status of these proceedings is not alleged. On September 16, 1988 Metro Uptown filed for reorganization under Chapter 11; this petition was voluntarily dismissed, but Lewis' likelihood of recovering his investment from Metro Uptown is allegedly remote. On January 24, 1989, Hermann, as general partner of Pueblo Villas, indicated to the limited partners that Pueblo Villas will attempt to refinance its indebtedness, but may be forced to default or file for bankruptcy.

In seeking to hold Richards and Hermann liable for any loss of these investments, Lewis' allegations of wrongdoing are substantially similar as to each partnership. Generally, Lewis claims a variety of omissions and misrepresentations made by Hermann and Richards in connection with their recommending and executing the purchase of interests in each of the partnerships on behalf of Lewis. Lewis claims that these defendants never told him about the substantial sales or management commissions that they would receive from the transaction. Regarding La Villita and Houston Land, Lewis claims he never received a private placement memorandum. Regarding Metro Partners and Metro Uptown, Lewis claims that he was not told about or directed to read the information contained in each private placement memorandum. Lewis further alleges wrongdoing regarding the handling of certain of the investor suitability questionnaires. Lewis also claims that he was given false information about the price and viability of the real estate investments in Metro Partners and Metro Uptown.

**B. Allegations against Long Grove, Much Shelist, and S & F**

Lewis claims that Long Grove should be held liable as a responsible party in this action because Long Grove was listed as the broker-dealer for the purchase of the serial note issued by Houston Land.[2] Lewis alleges in Count XI that, as a registered broker on the sale of Houston Land, Long Grove failed to adequately or properly train or supervise Richards' activities, and that Long Grove aided and abetted the fraud perpetrated upon Lewis in violation of federal securities laws.

Lewis seeks to hold the law firms S & F and Much Shelist liable for their respective roles in counseling Hermann in the drafting and finalizing of office circulars which were used in the solicitation and sale of interests in Metro Partners and Metro Uptown. Lewis claims that S & F and Much Shelist had a duty to disclose Hermann's and Richards' material misrepresentations or omissions, and that, by failing to do so, they aided and abetted the commission of securities fraud against Lewis.

**II. Discussion**

**A. Statute of Limitations**

Each of the defendants has moved to dismiss certain counts or portions of counts on the ground that they are barred by the applicable statute of limitations. Richards challenges the timeliness of the claims in Counts I–VII that relate to Metro Partners and Houston Land. Hermann challenges the timeliness of the claims in Counts I, IV, V and VII that relate to Metro Partners, La Villita and Pueblo Villas and the claims in Counts III and VI that relate only to Metro Partners and La Villita.[3] Long Grove, Much Shelist and S & F have challenged the timeliness of Counts XI, XII and XIII respectively.

---

**2.** In addition, Lewis also has alleged that Richards had at various times listed Coleman–Richards Equity, the predecessor of defendant corporation River North Securities Corporation ("River North") as a branch office of Long Grove. Lewis, however, has predicated no claim in his complaint based on that relationship.

**3.** Hermann was not named as a defendant in Count II.

1. Timeliness of Limitations Argument

With respect to the statute of limitations arguments raised by Richards and Hermann, Lewis first argues that these defendants have waived the right to raise the limitations defense. Hermann filed his answer to Lewis' original complaint on August 11; Richard filed his on August 14, 1989. The answers did not assert the statute of limitations as an affirmative defense. On June 1, 1990, Lewis filed his amended complaint, which added new counts and parties but did not significantly change any of the claims against Richards and Hermann. It was in their answers to the amended complaint that Richards and Hermann first raised the defense of the statute of limitations. The same limitations defense was also raised by the each of the newly added defendants. All of the motions to dismiss were directed at the amended complaint, with Richards and Hermann being the first to promptly file their motions.

 Generally, an assertion that the statute of limitations bars a claim is an affirmative defense which must be pleaded in the first responsive pleading or it may be considered waived. *See Johnson v. Heckler,* 769 F.2d 1202, 1208–09 (7th Cir.1985); *Metropolitan Housing Development Corp. v. Village of Arlington Heights,* 558 F.2d 1283 (7th Cir.1977), *cert. denied,* 434 U.S. 1025, 98 S.Ct. 752, 54 L.Ed.2d 772 (1978). This rule, however, is not applied automatically and as a practical matter there are numerous exceptions to it. *See generally,* 5 Wright & Miller, *Federal Practice and Procedure,* § 1278, 491–505 (1990). Resolution of the issue appears mainly to be a matter within our discretion, balancing the available procedures for correcting any omission from the pleadings with prudential considerations of notice and prejudice to the plaintiff. In other words, since the federal rules allow liberal amendment of pleadings, including answers, our primary consideration basically is whether we would have allowed Richards and Hermann leave to amend their original answer

in June of 1990 had they not been compelled to file new answers in response to Lewis' amended complaint. Without unduly complicating the analysis, we believe that the circumstances of this case do not warrant a finding of waiver.

Subsequent to the close of the original pleadings, the parties spent the first several months attempting to reach a settlement. It was not until those efforts failed in mid-January 1990 that the case entered the initial phases of discovery, during which time the parties on both sides sought and obtained repeated extensions of time for discovery and to add parties. It was not until the middle of May that the first two depositions were noticed and the parties reached certain accords regarding the discovery of documents. In sum, nothing of major substance transpired in the case between the time it was originally filed and the time that Lewis filed his amended complaint.[4] Thus, what Lewis derides as a delay of over a year on the part of Richards and Hermann in raising the limitations defense was a delay of no great consequence to the pursuit of the merits of the case. *Cf. Expertise, Inc. v. Aetna Fin. Co.,* 810 F.2d 968 (10th Cir.1987) (a statute of limitations defense was not waived by its absence from defendant's answer, when the defense was included in a pre-trial order). The only prejudice to Lewis is that he may ultimately be denied a decision on the merits of his case. That alone is not the kind of prejudice that compels a finding of waiver of the limitations defense—if it were, then there would never be grounds for allowing an affirmative defense that was not raised in the original answer.

2. Counts I and XI–XIII (Federal Securities Laws)

 Counts I and XI–XIII are based on alleged violations of Sections 10(b) and 15(c)(1) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j(b) and 78*o*(c)(1). The Seventh Circuit has recently overruled prior precedent and held that Section 13 of the Securities Act of 1933, as amended by the Securities Act of 1934 ("§ 13"), 15 U.S.C.

---

**4.** In his response to Richards' motion, Lewis asserts that he has engaged in extensive discovery. Lewis, however, has failed to identify

how much, if any, of this discovery was undertaken prior to the filing of his amended complaint.

§ 77m, provides the most appropriate limitations period for § 10(b) and Rule 10b–5 actions. *Short v. Belleville Shoe Manufacturing Co.*, 908 F.2d 1385 (7th Cir.1990). And just this past week, in reversing a case out of the Ninth Circuit, the United States Supreme Court affirmed that Section 13 provides the applicable limitations period. *Lampf v. Gilbertson,* —— U.S. ——, 111 S.Ct. 2773, 115 L.Ed.2d 321 (1991). Section 13 provides that an action is barred unless brought within one year of the discovery of the untrue statement or omission but in no event shall any action be brought more than three years after the sale. 15 U.S.C. § 77m. Equitable tolling principles will not extend the filing period beyond three years after the transaction. *Lampf,* —— U.S. at ——, 111 S.Ct. at 2782; *Short,* 908 F.2d at 1391–92; *see also Norris v. Wirtz,* 818 F.2d 1329 (7th Cir.) *cert. denied,* 484 U.S. 943, 108 S.Ct. 329, 98 L.Ed.2d 356 (1987) (Legislative history of § 13 indicates that Congress did not intend equitable tolling principles to apply in actions under the federal securities laws).

▆▆▆ In response to the motions to dismiss Lewis has raised the issue, expressly left open in *Short,* as to whether *Short* should be applied retroactively.[5] 908 F.2d at 1389; *see also, Radiology Center, S.C. v. Stifel, Nicolaus & Co.,* 919 F.2d 1216, 1223 (7th Cir.1990); *Robin v. Arthur Young & Co.,* 915 F.2d 1120, 1122 (7th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 1317, 113 L.Ed.2d 250 (1991); *Astor Chauffeured Limousine Co. v. Runnfeldt Invest. Corp.,* 910 F.2d 1540, 1544 (7th Cir.1990). Lewis claims that, because the decision was handed down after he filed his amended complaint and represented a clear break from past precedent, a retroactive application of *Short* would be unjust. *See*

*Chevron Oil Company v. Huson,* 404 U.S. 97, 92 S.Ct. 349, 355, 30 L.Ed.2d 296 (1971). In seeking to avoid retroactive application of *Short,* Lewis wishes to defeat the statute of limitations defense by taking advantage of earlier rulings in this circuit that applied the arguably broader statute of limitations of the forum state to Section 10(b) and Rule 10b–5 cases. *See, e.g., Davenport v. A.C. Davenport & Son, Inc.,* 903 F.2d 1139 (7th Cir.1990) (employing the three year limitations period found in Section 13(D) of the Illinois Securities Act, Ill.Rev.Stat., ch. 121½, ¶ 137.13(D)); *Parent v. Midwest Rug Mills, Inc.,* 455 F.2d 123, 127 (7th Cir.1972) (same).

Lewis relies in part on our prior decision in *Charette v. Emanuel,* No. 89 C 6497 slip op., 1990 WL 86039 (N.D.Ill., June 13, 1990). In that opinion, decided prior to *Short,* we declined to depart from then-existing precedent as to the statute of limitation and further concluded in any event that

> even if we chose to depart from existing precedent, it would be inappropriate to enforce a new limitations period in this case. A court should not apply a new rule of law retroactively when to do so would overrule clear precedent and result in injustice. *Chevron Oil Company v. Huson,* 404 U.S. 97, 92 S.Ct. 349, 355 [30 LEd2d 296] (1971). The application of a new statute of limitations in this case would result in injustice to Charette, who was entitled to rely on Seventh Circuit precedent establishing a three year limitations period. This reliance was justified even though it appears that this precedent may topple in the near future. *See Kayne v. Paine Webber,* 703 F.Supp. 1334, 1343 (N.D.Ill.1989).

If *Short* itself is to be a guide on the question of retroactivity, however, we must

---

5. *Short* was decided on July 30, 1990, one month after Lewis filed his amended complaint and subsequent to the filing of motions to dismiss by Richards and Hermann, and thus neither side had a good opportunity effectively to address *Short's* applicability. In his response to the motions filed by Long Grove and S & F, Lewis did mention the issue of *Short* retroactivity, but only in a footnote, a means which the Seventh Circuit has long deemed as insufficient to present a matter for decision. *See, e.g., U.S. v. Bentley,* 825 F.2d 1104 (7th Cir.1987). The

issue of *Short* retroactivity, however, was properly raised and fully briefed by both sides in connection with Much Shelist's motion to dismiss. Although we, too, normally adhere to Seventh Circuit's principle of disregarding issues raised only in footnotes, we shall make an exception in this case, given the substantial overlap of arguments by all sides on the statute of limitations issue. Accordingly, we shall likewise consider the Richards and Hermann motions in light of *Short* without requiring further briefing on the issue.

acknowledge that Lewis' reliance on our decision in *Charette* must be to no avail. The decision of the Seventh Circuit plainly overrides our conclusion in *Charette* that it would be inappropriate to apply a new statute of limitation to bar the claim of the party in whose case the new rule was announced—the *Short* panel specifically found that such an application was warranted. *See also Lampf,* —— U.S. at ——, 111 S.Ct. at 2786 (O'Connor, J., dissenting) ("the Court shuts the courthouse door on respondents because they were unable to predict the future"). Of course, the Seventh Circuit finding was based in part on the principle that "new rules of law apply in the cases that establish them." *Short,* 908 F.2d at 1390. Yet, the Seventh Circuit further reasoned: "Short cannot have relied on Illinois law, because she claims to have been unaware of the basis for litigation until a short time before filing suit. Effects of reliance on our former holdings may be determined when the plaintiff demonstrates reliance." *Id.*

Based on this reasoning, it is apparent that the question left open by *Short* is not a broad question as to whether the new statute of limitations should ever be retroactively applied. After all, the court essentially retroactively applied the new period to Short's claim. The question left open is whether retroactive application of the new rule may be excused in particular cases where a plaintiff can show an as of yet undefined form of reliance on the Seventh Circuit's holdings prior to *Short. See* 908 F.2d at 1389 ("the retroactive application of decisions affecting periods of limitations is a question of some subtlety depending on the nature of the reliance interests"); *cf. Welch v. Cadre Capital,* 923 F.2d 989, 991 (2d Cir.1991) (considering whether case "falls within the exception to the general practice of applying new judicial decisions retroactively").

Absent evidence of any reliance on prior holdings, Lewis' claims should fare no better than that of the plaintiff in *Short,* since Lewis' position in this litigation would be no different than that of the plaintiff in *Short.* If the new rule may be applied to the case in which it was adopted, we see no

reason why it would be unjust to apply it under the same circumstances to cases that follow. In other words, from the plaintiff's perspective in *Short,* an injustice would arise by not giving retroactive effect in later cases that are similar simply because of the fortuity that the new rule had been decided earlier: why should the plaintiff in *Short* essentially be penalized for being the first plaintiff to lose on the statute of limitations question? Therefore, we shall consider whether or not Lewis' complaint presents a different reliance scenario than the one presented (or not presented) in *Short.*

In applying Section 13 to the plaintiff's claim in *Short,* the Seventh Circuit found the following:

> Short sold her shares to Belleville Shoe on May 5, 1977. Although she contends that she did not discover the fraud until late 1988, the second sentence of § 13 sets three years after the sale as the outer limit for litigation. That time expired in 1980. Suit was not filed until 1989. It was untimely.

908 F.2d at 1392. Because the plaintiff did not discover the alleged wrongdoing until after the three-year limitations period of repose established in *Short* had run, the Seventh Circuit concluded that the plaintiff could not possibly have relied on pre-*Short* law in failing to file in a timely manner because she could not know she had a cause of action until after the period established by *Short* had expired.

Here, the situation is the same. With respect to all but one of the investments at issue, Metro Uptown, Lewis did not discover any alleged wrongdoing until after the three-year repose period established by *Short* had already run: 1) Lewis invested in La Villita some time in 1981, but claims that he did not discover any reason to suspect the purported fraud until January 25, 1989; 2) Lewis invested in Metro Partners some time in 1984, but did not discover any reason to suspect the purported fraud until April 29, 1988; 3) Lewis invested in Houston Land some time in 1985, but did not discover any reason to suspect the purported fraud until September 2, 1988;

and 4) Lewis invested in Pueblo Villas some time in 1985, but did not discover any reason to suspect the purported fraud until January 24, 1989. Similar to the plaintiff in *Short*, because Lewis was unaware of his claims until after the new period of repose had expired, he could not have delayed filing suit in reliance on Illinois law. *Short*, 908 F.2d at 1390; *see also In re VMS Securities Litigation*, 752 F.Supp. 1373 (N.D.Ill.1990).

Lewis contends, however, that his situation is different because he relied on prior precedent in investigating his claims. *See* Response to S & F Motion to Dismiss at 2–3 n. 1; Response to Long Grove Motion to Dismiss at 2–3 n. 1. Leaving aside for the moment that Lewis failed to substantiate that factual assertion either by an allegation in the complaint or by any form of testimony or evidence, it is undisputed that, from Lewis' perspective, there was nothing to investigate until it was too late. On this point, S & F has provided a good example of the distinction to be made:

> Prejudicial reliance could possibly occur where a plaintiff learned of a claim within the three-year period, but, relying on existing law providing for a longer limitations period, elected to wait until after the three-year period before filing suit. But where, as here, the new limitations period had already run before the plaintiff knew of the existence of the claim, there can be no such reliance—regardless of the plaintiff's belief, action or anything else, the statutory period had already elapsed, and even an immediate filing could not resuscitate it.

S & F Reply at 3. The only investment to which this example might apply is Lewis' claim in Count XII against Much Shelist regarding Metro Uptown: Lewis invested in Metro Uptown presumably some time in 1986,[6] discovered the purported fraud within three years on September 16, 1988, but did not file suit against Much Shelist until

June 1, 1990—well after the new three-year period of repose had elapsed, but shortly before the expiration of the former five-year period of repose.[7] In order for the example to apply, however, Lewis must actually have relied on the then-existing longer period of repose as reason for the delay of almost two years in filing suit against Much Shelist. As we have already observed, however, Lewis has neither alleged in his complaint nor provided any evidence of such actual reliance. Simply to argue as a matter of law that the former limitations law provided a longer period of repose is insufficient to show prejudicial reliance.

As a final reason for not applying the new limitations period, Lewis seeks an exception based on the fact, also unsupported either by allegation or by evidence, that the defendants actively concealed their purported fraud.[8] Even assuming that Lewis had adequately alleged fraudulent concealment for the purposes of a motion to dismiss, while fraudulent concealment may provide a reason to equitably toll the running of the statute of limitations, Lewis' claim of reliance ultimately rests, not on the former statute of limitations, but on a statute of repose. *See* Lewis' Response to Much Shelist Motion to Dismiss at 6. As we have already noted, equitable tolling principles will not extend the filing period beyond that three year period of repose. *Lampf*, —— U.S. at ——, 111 S.Ct. at 2782.

Accordingly, based on Section 13's limitations period, we grant Richards' and Hermann's motion to dismiss Count I as it relates to all but the Metro Uptown investments. For the same reason, we dismiss Counts XI–XIII in their entirety.

### 3. Count II (ERISA)

In Count II, Lewis alleges violations by Richards of ERISA Section 404(a)(1) with respect to the sale of the Houston Land and Metro Uptown serial notes. *See* 29 U.S.C. § 1104(a)(1) (1989). Richards raises

---

**6.** Although Lewis has neither alleged the precise date, nor provided substantive evidence of the date, he has represented that the date was December 31, 1986.

**7.** Neither Hermann nor Richards has sought dismissal of the federal securities claims against them in Count I based on Metro Uptown investment.

**8.** See subsection 4 below.

the statute of limitations for ERISA, found at 29 U.S.C. § 1113 (1989) ("Section 1113"), as a bar to this claim. Section 1113 bars actions based on violations of ERISA which are filed after the earlier of:

> (1) six years after (A) the date of the last action which constituted a part of the breach or violation or (B) in the case of an omission, the latest date on which the fiduciary could have cured the breach or violation, or

> (2) three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation;

> except that in the case of fraud or concealment, such action may be commenced not later than six years after the date of discovery of such breach or violation.

29 U.S.C. § 1113 (1989). With respect to the second option, constructive knowledge of the conduct giving rise to a cause of action for breach of fiduciary duties under Section 1113 will not cause the limitation period to begin to run, but "[o]nly actual knowledge will do." *Radiology Center,* 919 F.2d 1216 (7th Cir.1990) (citing *Brock v. Nellis,* 809 F.2d 753, 754–55, *cert. dismissed,* 483 U.S. 1057, 108 S.Ct. 33, 97 L.Ed.2d 821 (1987)).

■ Lewis has not alleged the dates of occurrence for the last actions which constituted breaches for both investments. That omission, however, does not hinder the comparative analysis required by Section 1113. Since suit was filed within six years of the sale of each of the investments at issue—which we shall assume is the earliest "date of last action" under paragraph 1 of Section 1113—we need only consider whether the conditions of paragraph 2 of Section 1113 would have required an earlier filing. Lewis has alleged that the dates on which he had actual knowledge of the breach or violation were the dates that Houston Land and Metro Uptown filed for bankruptcy. The corresponding dates of actual notice of breach with respect to Houston Land and Metro Uptown were September 2, 1988 and September 16, 1988. Since Lewis filed suit against Richards on June 6, 1989, well within the three years of the date of al-

leged actual notice, the actions with respect to Houston Land and Metro Uptown, paragraph 2 has also been satisfied. Accordingly, we find that Count II is not barred by the statute of limitations.

4. Counts III, VI, and VII (Common Law Fraud, Breach of Fiduciary Duty, Negligent Misrepresentation)

With respect to Counts III, VI and VII, Hermann has moved to dismiss the claims pertaining to La Villita and Metro Partners, and Richards has moved to dismiss the claims pertaining to Metro Partners and Houston Land. The parties apparently agree that these claims are subject to the statute of limitations found in Ill.Rev.Stat. ch. 110, ¶ 13–205, which allows for the commencement of an action within five years after the cause of action accrued—in this case, the respective dates of each investment.

■ Specifically regarding Houston Land, Lewis' June 6, 1989 complaint suggests that the underlying transaction occurred in mid–1985. Therefore suit was clearly brought within the five-year period allowed by the statute. Accordingly, we deny Richards' motion on these counts as they relate to Houston Land. Lewis does not dispute, however, that over five years have elapsed between the filing of suit and the respective dates of the La Villita and Metro Partners transactions. Instead, he relies on the special limitations period found in Ill.Rev.Stat. ch. 110, ¶ 13–215 (1984) ("Section 13–215") which allows a party to commence an action within five years of discovery of the action where a defendant fraudulently conceals the cause of action from the plaintiff. *See Pucci v. Santi,* 711 F.Supp. 916 (N.D.Ill.1989); *Suslick v. Rothschild Securities Corp.,* 164 Ill.App.3d 589, 115 Ill.Dec. 189, 517 N.E.2d 600 (1987), *rev'd on other grounds,* 128 Ill.2d 314, 131 Ill.Dec. 178, 538 N.E.2d 553 (1989). In most cases, where a plaintiff shows that the fraud went undiscovered because the defendant actively concealed the fraud, the statute of limitations will be tolled, unless the plaintiff should have discovered the cause of action by using his

own due diligence. *Suslick v. Rothschild Securities Corp.*, 741 F.2d 1000, 1004 (7th Cir.1984). In some instances, however, a plaintiff's due diligence may be excused. When a fiduciary with a duty to disclose engages in active concealment to hide wrongdoing, the running of the limitations period will be tolled until the time of discovery even in the absence of affirmative misrepresentations and in the absence of the plaintiff's due diligence. *Pucci*, 711 F.Supp. at 923 (N.D.Ill.1989) (citing *Leffler v. Engler, Zoghlin & Mann, Ltd.*, 157 Ill. App.3d 718, 722–23, 109 Ill.Dec. 950, 510 N.E.2d 1018 (1st Dist.1987) and *Prueter v. Bork*, 105 Ill.App.3d 1003, 1007, 61 Ill.Dec. 620, 435 N.E.2d 109 (1982)). In order to obtain the benefits of these tolling rules, however, Lewis must have adequately pled or proved his entitlement to them. This, Lewis has failed to do.

■ First, at least with respect to Richards, Lewis' allegations do not support his contention that he was excused from exercising his own due diligence because Richards was a fiduciary with respect to each of the transactions at issue. Although Lewis' complaint may be read to suggest that he had a longstanding relationship of trust with Richards—indeed, one in which he blindly signed documents at Richards' request—neither the complaint nor Lewis' assertion in his motion papers advance the basis upon which Richards might be deemed as a matter of law to have been a fiduciary of Lewis. *Compare Charette*, slip op. at 1 (defendant acted as plaintiff's attorney and accountant); *Pucci*, 711 F.Supp. at 923 (defendant held himself out to be lawyer for plaintiffs); *Daniel v. Int'l Brotherhood of Teamsters*, 410 F.Supp. 541 (N.D.Ill.1976) (defendants were pension trustees with fiduciary obligations to the plaintiff).

■ With respect to Hermann, the complaint does indicate that Hermann served as Lewis' accountant and as trustee for the Lewis Trust. Drawing all inferences from the allegations in the light most favorable to Lewis, we shall assume, for the purposes of the motion to dismiss, that Hermann's role as an accountant and trustee related to the transactions at issue such that he was under an affirmative obligation to disclose, thereby excusing Lewis' own due diligence in discovering Hermann's alleged fraud with respect to the sale of the La Villita and Metro Partners investments.

Accepting the fact that Hermann was a fiduciary, and even assuming Richards was also a fiduciary, Lewis nevertheless has failed to additionally allege a basis from which we might infer that, having purportedly committed fraud in the sale of both investments, Richards and Hermann took measures to actively conceal the fraud from Lewis. The allegations in the complaint do not refer even inferentially to any post-transaction conduct of Richards or Hermann, let alone conduct that would indicate active concealment of the fraud. *See, Davenport*, 903 F.2d at 1142 (holding that the silence of a fiduciary does not constitute concealment and that a plaintiff must show that the defendants took additional affirmative steps after committing the fraud to keep it concealed). In fact, Lewis does not rely on the allegations in his complaint at all as support specifically on the question of active concealment. Instead, Lewis suggests that discovery has revealed additional facts which support fraudulent concealment. Lewis refers at one point to certain letters that supposedly were written to him by Richards regarding the Metro Partners and Houston Land investments.[9] *See* Response to Richards Motion to Dismiss at 9. Lewis also mentions purported communications with Hermann regarding the status of the investments. *See* Response to Hermann Motion to Dismiss at 7. We reiterate, however, that these matters were never raised in the pleadings, and hence they are inappropriate for our consideration on a motion to dismiss. Absent supporting documentation, it is equally inappropriate for us to consider them as if on summary judgment.

9. Since the five-year statute based on the time of accrual had not elapsed, such purported evidence is irrelevant to the Houston Land investment. Lewis makes no mention of similar evidence concerning La Villita.

Remarkably, Lewis suggests that, because the defendants only brought their motion as a motion to dismiss and not as one for summary judgment, he has somehow been foreclosed from submitting affidavits and other evidence to establish his assertion of fraudulent concealment. No such bar exists. Indeed, to counter the obvious lack of particular allegations of fraudulent concealment, Lewis should have either amended his complaint or properly submitted the matters outside of the pleadings to us by converting the motion to dismiss into a motion for summary judgment, as clearly provided for in Rule 12(h) of the Federal Rules of Civil Procedure. *Cf. Charette*, slip op. at 8 (plaintiff submitted affidavit stating that whenever he inquired about investments, the defendant assured him everything was fine); *Pucci*, 711 F.Supp. at 923 (plaintiffs alleged that defendant intentionally failed to disclose wrongdoing to them). Such a course of action is among the most elementary and well known of procedures to employ under the federal rules, and we see no reason to excuse Lewis' failure to take such action in this case.

Because Lewis has failed to allege a proper basis to support a finding that Richards had a fiduciary obligation of affirmative disclosure, and, more importantly, because Lewis has failed to adequately plead or prove active concealment of fraud on the part of either Richards or Lewis, we grant the motions to dismiss Counts III, VI and VII as untimely brought as they relate to the La Villita and Metro Partners investments.

### 5. Count IV

Count IV alleges violations of the Illinois Securities Law of 1953, Ill.Rev.Stat. ch. 121½, ¶ 137.12(F), (G), and (I). Hermann has moved to dismiss this count as it relates to Pueblo Villas, La Villita and Metro Partners, and Richards has moved to dismiss this count as it relates to Metro Partners and Houston Land. Their mo-tions are based on the three-year limitations period dating from the time of sale found in Ill.Rev.Stat. ch. 121½, ¶ 137.13(D). That statute further allows for a period of tolling and repose:

> if the party bringing the action neither knew or in the exercise of reasonable diligence should have known of any alleged violation ... the 3 year period provided herein shall begin to run upon the earlier of:
>
> (1) the date upon which the party bringing such action has actual knowledge of the alleged violation of this Act; or
>
> (2) the date upon which the party bringing such action has notice of the facts which in the exercise of reasonable diligence would lead to actual knowledge of the alleged violation of the Act; but in no event shall the period of limitation so extended be more than two years beyond the expiration of the period otherwise applicable.

Notwithstanding any other grounds for dismissal under the statute, the five-year period of repose clearly bars Lewis' claims concerning La Villita and Metro Partners, each of which, based on the allegations in the complaint, was sold over five years prior to Lewis' filing suit. Even if tolling principles apply to extend the filing period beyond three years, tolling principles may not extend that period beyond the five-year period of repose. *Davenport*, 903 F.2d at 1143 (7th Cir.1990).

Moreover, the parties are in agreement that, regardless of whether state statutory, state equitable, or federal equitable tolling principles apply, the relevant question in deciding whether the three-year period might have been tolled in this case is whether Lewis can establish fraudulent concealment.[10] Thus, with respect to Pueblo Villas and Houston Land, as well as Metro Partners and La Villita, Lewis has failed to allege or prove a basis for the tolling of the three-year limitations period

---

10. With respect to the alleged violation of the Illinois Securities laws, the parties have failed to specifically identify which tolling principles should apply. Assuming there exists a relevant distinction between federal and state tolling principles, we nevertheless are of the view that there does not appear to be a compelling reason to apply federal equitable tolling principles to the running of a state limitations period on a claim that arises strictly under state law.

for the reasons discussed at greater length in the previous section.[11] Accordingly, we grant the motions to dismiss Count IV as untimely brought as it relates to La Villita, Metro Partners, Houston Land, and Pueblo Villas.

### 6. Count V

▆ Finally, Count V alleges a violation of the Illinois Consumer Fraud Act. Richards has moved to dismiss this count as it relates to Metro Partners and Houston Land, and Hermann has moved to dismiss this count as it relates to La Villita, Metro Partners and Pueblo Villas based on the three-year period of limitations dating from the accrual of the cause of action found in Ill.Rev.Stat. 121½, ¶ 270a(e). Here, again, there is no dispute that, absent some form of equitable tolling based on fraudulent concealment, the claims in Count V based on these investments are barred. Thus, based on our prior finding that Lewis has failed to allege or prove fraudulent concealment, we grant the motions to dismiss Count V as untimely as it relates to La Villita, Metro Partners, Houston Land and Pueblo Villas.

### B. Substantive Challenges

We now turn to the alternative substantive challenges to the sufficiency of certain of Lewis' claims for relief.

### 1. Loss Causation

▆ Hermann, Richards, and Long Grove Trading have moved to dismiss Lewis' federal securities claims against them (Counts I and XI) for failing to adequately plead loss causation—namely that he "would not have suffered a loss if the facts were what he believed them to be." *LHLC Corp. v. Cluett, Peabody & Co.*, 842 F.2d 928, 931 (7th Cir.), *cert. denied*, 488 U.S. 926, 109 S.Ct. 311, 102 L.Ed.2d 329 (1988). In order to establish loss causation, "[a] plaintiff must prove not only that had he known the truth, he would not have acted,

but in addition that the untruth was in some reasonably direct, or proximate way responsible for his loss." *Currie v. Cayman Resources Corp.*, 835 F.2d 780, 785 (11th Cir.1988) (quoting *Huddleston v. Herman & MacLean*, 640 F.2d 534, 549). The plaintiff must suggest a reason *why* the investment was lost. *Bastian v. Petren Resources Corp.*, 892 F.2d 680, 684 (7th Cir.), *cert. denied*, —— U.S. ——, 110 S.Ct. 2590, 110 L.Ed.2d 270 (1990) (emphasis in original).

▆ We first observe that nowhere in his complaint does Lewis even conclusorily allege loss causation as to any of the transactions. Lewis has, however, provided certain general fact allegations from which we may reasonably infer loss causation, but only with respect to Metro Uptown and Metro Partners. Lewis has alleged that neither Metro Uptown nor Metro Partners had a realistic chance of success or profit because the purchase prices of the office buildings at issue were grossly inflated. *See* Complaint at ¶ 38(a), (b) and 47(a). Thus, with respect to the defendants' representations or omissions as to the purchase price of these investments, it is possible to infer that they were specifically related to the loss of the investment.

▆ As to the other investments, however, Lewis' complaint not only is bereft of allegations that might link misrepresentations or omissions by the defendants to the reason for the failed investments, but the complaint utterly lacks any allegation that would even tend to suggest why those investments might have failed. Lewis' only argument in response is one that seeks to avoid any revelation as to why the investments failed. Lewis maintains that he has satisfactorily alleged loss causation because the investments were represented to him as being "risk free." Thus, Lewis effectively seeks to establish loss causation on the ground that the investments should never have failed for any reason whatever.

---

11. Notwithstanding the fact that the Houston Land investment has been identified in the complaint as a Texas based limited partnership, none of the parties has indicated why the limitations period for the sale of securities in Illinois would be applicable to the sale of a security outside of Illinois. However, since Lewis has failed to raise any objection to the applicability of the Illinois limitations period in this context, we must regard the matter as conceded or waived.

*Cf. Bastian,* 892 F.2d at 685–86 (7th Cir. 1990).

Yet, even if we accept that premise as a proper basis for establishing loss causation (and as an excuse for failing to specifically identify why the investments may have failed), the allegations in Lewis' complaint fail to support his contention that the investments were represented to him as being "risk free." Lewis first maintains that the complaint makes it clear that Richards was recommending the purchase of the Houston Land serial notes as a risk-free investment. *See* Lewis' Response to Long Grove at 7–8. Contrary to Lewis' assertion, however, the complaint does not even allege that Richards "recommended the Houston Land as a good investment and represented that he had done his due diligence on it." *Id.* at 7; *see* Complaint at ¶¶ 49–53.[12] Further, as to La Villita and Pueblo Villas, although the complaint alleges that Hermann represented that each was a "good investment," Complaint at ¶¶ 56 and 62, we cannot infer from that allegation alone that, by the word "good," Hermann meant and Lewis understood that each investment was "risk-free." These nonspecific allegations, particularly in the absence of any allegations that might provide even an inkling as to why the investments might have failed (other than Metro Partners and Metro Uptown), are insufficient to state the essential element of loss causation.

 Richards has also moved to dismiss the other claims against him for failure to allege loss causation—ERISA (Count II), common law fraud (Count III), the Illinois Securities Law (Count IV), the Illinois Consumer Fraud and Deceptive Business Practices Act (Count V), breach of fiduciary duty (Count VI), and negligent misrepresentation (Count VII). Neither Richards nor Lewis has asserted authority that loss causation is an essential element of any of these claims. Yet, Lewis has effectively conceded that it is a requirement. *See* Lewis' Response to Richards at 12 n. 8. Accordingly, our holdings as to Counts I and XI shall apply to these other counts as well.

2. Private Cause of Action Under Section 15(c) of the Securities Exchange Act

Richards and Long Grove have next moved to dismiss the federal securities claims insofar as they seek recovery under Section 15(c) of the Securities Exchange Act of 1934. 15 U.S.C. §§ 78j and 78*o*(a)(1). Both defendants contend that there is no private cause of action under Section 15(c). In the past, several courts in this district, including this court, have either expressly or implicitly authorized a private cause of action under Section 15(c). *See Sennett v. Oppenheimer & Co.,* 502 F.Supp. 939 (N.D.Ill.1980) (Aspen, J.); *Gotshall v. A.G. Edwards & Sons, Inc.,* 701 F.Supp. 675 (N.D.Ill.1988). Although the Seventh Circuit apparently has yet to pronounce an opinion as to this issue, Richards points to fairly recent decisions from other circuits that have taken a different view. *See Asch v. Philips, Appel & Walden, Inc.,* 867 F.2d 776 (2d Cir.), *cert. denied,* 493 U.S. 835, 110 S.Ct. 114, 107 L.Ed.2d 75 (1989); *Brannan v. Eisenstein,* 804 F.2d 1041 (8th Cir.1986). Richards accordingly has asked us to re-examine the issue. However, in light of our disposition of most of the federal securities claims based on the statute of limitations,[13] we decline to rule on this issue until it appears necessary to do so in connection with the

---

12. We note that the complaint's many allegations concerning undisclosed commissions and conflicts of interest bear only upon the issue of transaction causation. In other words, although the conflicts and the commissions might provide a reason why Lewis might have been dissuaded from investing through Richards or Hermann, they do not create any inference that Lewis would not have made this kind of investment. In any event, in none of his responses to the various motions to dismiss does Lewis rely on any of these allegations as bearing upon the issue of loss causation.

13. With respect to the applicability of Section 13 to the private rights of action that Lewis seeks to enforce under the federal securities laws, neither Lewis nor the defendants have asserted any distinction between Rule 10(b) and a purported right of action under Rule 15(c). Therefore, our statute of limitations discussion applies to both bases for relief.

remaining Section 10(b) claim. Accordingly, we make no finding on the private cause of action issue at this time.

### 3. Aiding and Abetting Securities Fraud

 Long Grove, Much Shelist, and S & F have moved to dismiss the aiding and abetting claims against them (Counts XI–XIII) for failure to state a claim. In order to state a cause of action for aiding and abetting, Lewis must show that "each person alleged to be an aider, abettor, or conspirator himself committed one of the 'manipulative or deceptive' acts or otherwise met the standards of direct liability (save for the fact that he did not offer or sell the securities)." *Barker v. Henderson, Franklin, Starnes and Holt,* 797 F.2d 490, 495 (7th Cir.1986). In addition, Lewis must show (1) that someone committed a primary violation; (2) that positive law obliges the abettor to disclose the truth; and (3) that the abettor fails to do this with the same degree of scienter necessary for the primary violation. *DiLeo v. Ernst & Young,* 901 F.2d 624, 628 (7th Cir.), *cert. denied,* — U.S. —, 111 S.Ct. 347, 112 L.Ed.2d 312 (1990). Allegations of aiding and abetting under these requisites must also satisfy Rule 9(b) of the Federal Rules of Civil Procedure. *Id.* at 629. In particular, the case against an aider and abettor "may not rest on a bare inference that the defendant 'must have had' knowledge of the facts. The plaintiff must support the inference with some reason to conclude that the defendant has thrown in his lot with the primary violators." *Barker,* 797 F.2d at 497. Lewis' complaint falls short of these requirements.

First, the allegations do not suggest that any of the three defendants affirmatively committed manipulative or deceptive acts in connection with the purported fraud of Richards and Hermann. Significantly, with reference to Richards as the primary actor, Lewis' complaint against Long Grove actually predicates the company's liability on the failure to play any role whatever in Richard's purported fraud. By the same token, there are no allegations in the complaint that either S & F or Much Shelist had anything to do with Richards and his activities. With reference to Hermann as the primary actor, the only conduct of S & F that is alleged with any particularity is that S & F advised Hermann regarding the structuring of Metro Partners and prepared the offering memorandum for the Metro Partners transaction. Lewis has not alleged, however, that there was anything fraudulent about either the structuring of the offering or of the offering materials. Similarly, Much Shelist is alleged to have rendered advice to Hermann in connection with the structuring and formation of Metro Uptown and to have drafted and approved the documentation relating to the sale of Metro Uptown. Here too, however, Lewis does not allege that there was anything wrong with either the structuring of the Metro Uptown transaction or with its supporting documentation. Thus, as to both Metro Partners and Metro Uptown, the only activity that S & F or Much Shelist participated in has not been alleged to have been wrongful in any way.[14]

 Second, Lewis' claims fail to properly allege that the defendants had knowledge of Richards or Hermann's fraud. Regarding the sufficiency of allegations of scienter, the Seventh Circuit has held that, "[a]lthough Rule 9(b) does not require particularity with respect to the defendants' mental state, the complaint still must afford a basis for believing that the plaintiffs could prove scienter." *DiLeo,* 901 F.2d at 629. As to Long Grove, we again point out that Lewis' claim itself

---

**14.** In response to S & F on this point, Lewis discusses certain aspects of the PPM that he claims were fraudulent, misleading, or at least questionable. We again are compelled to disregard Lewis' assertions, since they were neither alleged in the complaint, nor supported by accompanying evidence or affidavits to convert the motion to one for summary judgment.

Further, even if Lewis' complaint may be read to suggest that the structuring of the transaction or the information contained in the offering documents was fraudulent, Much Shelist and S & F aptly have pointed out that Lewis has categorically denied reliance on anything that they might have drafted for Richards or Hermann. The underlying basis for Lewis' claims against Richards and Hermann is that he was never shown the offering memoranda prior to investing. *See* Complaint at ¶¶ 33 and 44.

is predicated on the fact that Long Grove failed to learn of any of Richards' wrongdoing.[15] Hence, the complaint fully contradicts any suggestion that Long Grove possessed the requisite scienter of Richards' purported conduct. In addition, there are no allegations that S & F or Much Shelist had any knowledge as to Richards' activities. With respect to Hermann's activities, absent some indication or evidence that S & F or Much Shelist must have had reason to know that the business information being supplied by Hermann was false or materially incomplete, we have no basis from which to infer scienter. A boilerplate allegation—which is all that we have here—that a defendant "knew or acted in reckless disregard" of the alleged fraud will not suffice to state a claim for aiding and abetting.[16] Id.

 Finally, since the securities laws do not impose a general duty to speak, id. at 628, even if S & F and Much Shelist knew of Hermann's material misrepresentations or omissions, their liability for aiding and abetting ultimately must rest on a duty to disclose. Barker, 797 F.2d at 497 (lawyers are not required to tattle on their clients in the absence of a duty to disclose); see also LHLC Corp., 842 F.2d 928. Lewis' allegations, however, fail to indicate any basis upon which to conclude that either S & F or Much Shelist owed a fiduciary duty to Lewis giving rise to a duty to disclose. As far as we can glean from the complaint, S & F and Much Shelist rendered services as attorneys for Hermann and the partnerships only in connection with the sale of the securities to purchasers such as Lewis.

Under such a circumstance, the firms had no duty to advise Lewis of any ongoing fraud. See, LHLC, 842 F.2d at 932–33. Accordingly, we dismiss the aiding and abetting claims found in Counts XI–XIII.[17]

### 4. Public Injury or General Effect on Consumers Under the Illinois Consumer Fraud Act

 Count V alleges a violation of the Illinois Consumer Fraud Act. Ill.Rev.Stat. ch. 121½, ¶¶ 262 et seq. Richards and Hermann argue that this claim is barred because it fails to state a public injury or a general effect on consumers. This is an issue which, until recently, had generated conflicting opinions both in state and in federal court. Compare Blake v. State Farm Mutual Automobile Insurance Co., 168 Ill.App.3d 918, 119 Ill.Dec. 617, 523 N.E.2d 85 (1st Dist.1988) (allegation of public injury or general harm was necessary); Bonfield v. Aamco Transmissions, Inc., 708 F.Supp. 867 (N.D.Ill.1989) (same); UNR Indus., Inc. v. Continental Ins. Co., 623 F.Supp. 1319, 1331 (N.D.Ill.1985) (same); with Haroco Inc. v. American National Bank and Trust Co., 647 F.Supp. 1026 (N.D.Ill.1986); In re CLDC, 18 B.R. 797 (N.D.Ill.1982). Recently, however, the state legislature has settled this issue by amending the act to specifically provide that "proof of a public injury ... or an effect on consumers generally shall not be required". See Ill.Rev.Stat. ch. 121½, ¶ 270a § 10a (1990 cumulative pocket part). Richards nevertheless argues that this statute cannot be applied retroactively to protect persons not previously included within

15. Lewis has failed to provide any authority that would support a claim under the "anti-fraud provisions of the federal securities laws," Complaint at ¶ 120, based on his allegations that Long Grove failed to train and supervise Richards. Instead, in his response to Long Grove's motion to dismiss, Lewis advances the proposition that these allegations state claims under Section 20(a) of the Securities and Exchange Act of 1934 and under a theory of respondeat superior. Yet, Lewis asserted neither of these grounds for relief in his complaint. Accordingly, we disregard them.

16. Lewis' allegations with respect to the gain that S & F and Much Shelist would receive from

the transaction in the form of fees are no more illuminating than those rejected as insufficient by the Seventh Circuit in DiLeo. 901 F.2d at 629.

17. Long Grove has additionally moved to dismiss Count XI insofar as it seeks to recover punitive damages based on the alleged violations of federal securities laws. Long Grove has also moved that the portion of the prayer for relief seeking attorneys' fees be stricken. Although we need not rule on these issues in light of our disposition of the entire claim, we note that Lewis raised no objection to these motions. Accordingly, for the record, we grant the motions.

its scope. *See Reichelt v. Urban Invest. & Dev. Co.*, 577 F.Supp. 971, 976 (N.D.Ill. 1984). We do not find that principle applicable in this case. The amendment did not alter clear precedent on the issue; in essence, it merely clarified the purpose of the act in light of the divergent precedent on the issue. The legislature has merely adopted its preferred view and codified it. Consequently, we find that Lewis was not required to allege a public injury or general harm in order to state a claim under the Illinois Consumer Fraud Act. Accordingly, Richards' motion to dismiss Count V on this basis is denied.

### C. Motion to Strike/Judgment on the Pleadings (Count X)

Lewis has moved to strike certain portions of Hermann's answer to Count X and has additionally moved for an order granting judgment on the pleadings on Count X of the complaint. Count X seeks to enforce a personal and unconditional guaranty that Hermann allegedly signed that guaranteed Metro Uptown's obligations under the serial notes issued to Lewis. Lewis contends that Hermann's denial of certain averments in the amended complaint and Hermann's affirmative defense of economic duress should be stricken because Hermann did not assert these matters in his answer to identical averments in Lewis' original complaint. We deny the motion to strike for the reason we have outlined above in connection with Hermann's assertion of a statute of limitations defense. *See* Section A, subsection 1, above.

With respect to the motion for judgment on the pleadings, Hermann admits in his answer that he signed the guaranty and that the terms of the provisions of the guaranty speak for themselves. We find no ambiguity in the terms of the guaranty, and, in any event, it is undisputed that Metro Uptown's bankruptcy filing constitutes a default under the terms of the guaranty, thereby giving Lewis the right to enforce the guaranty against Hermann. In opposition to judgment on the pleadings, however, Hermann claims that his affirmative defense of economic duress raises issues of fact which, if proved, would defeat recovery. We reject that contention.

In his answer, Hermann maintains that Lewis was already obligated pursuant to a subscription agreement to pay for the serial notes in question when due. He claims economic duress based on the allegation that, notwithstanding Lewis' former obligation, Lewis

> engaged in the wrongful act of defaulting on its obligation to pay for these notes and then demanded that Hermann execute a guaranty and reduce the amount loaned. In so doing, [Lewis] took undue advantage of ... Hermann's business concerning these notes and thereby forced ... Hermann to execute this guaranty against his free will.

Hermann's Answer and Affirmative Defenses at 32. Based on these allegations, Hermann claims that questions of fact exist regarding the nature of the dispute over Lewis purported earlier obligation to purchase the serial notes and the negotiations that took place between Hermann and Lewis that gave rise to the guaranty. Lewis points out, however, that the guaranty clearly states that it was made in order to avoid and in settlement of litigation between Lewis and Metro Uptown. Thus, Hermann's guaranty renders moot any question as to whether or not Lewis was in fact formerly obligated on the serial notes in issue. Further, the allegations in Hermann's affirmative defense fail to provide any basis from which we might infer that anything untoward occurred in the negotiations giving rise to the guaranty, such that Hermann agreed to its entry against his will. Hermann's decision to forego litigation of Lewis' purported default is the only matter in the pleadings that conceivably relates to Hermann's assertion that Lewis took undue advantage of Hermann's business. Duress does not exist, however, merely where consent is secured by hard bargaining positions, difficult financial circumstances, or threat of legal action. *See Higgins v. Brunswick Corp.*, 76 Ill.App.3d 273, 277, 32 Ill.Dec. 134, 395 N.E.2d 81, 85

 

(1st Dist.1979).[18] Accordingly, we find that Hermann has failed to adequately allege economic duress. Since there are no issues of fact to be resolved with respect to Hermann's obligations to Lewis under the guaranty, we grant judgment on the pleadings in favor of Lewis on Count X of his complaint.

### Conclusion

We grant Richards' and Hermann's motion to partially dismiss the claims in Count I relating to each investment, except Metro Uptown, as barred by the statute of limitation. We deny Richards' motion to dismiss Count II on statute of limitations grounds. We grant Richards' and Hermann's respective motions to partially dismiss the claims in Counts III, VI, and VII relating to La Villita and Metro Partners as barred by the applicable statute of limitations. We deny Richards' motion to dismiss the claims in these counts relating to Houston Land on statute of limitations grounds. We grant Richards' and Hermann's motion to partially dismiss the claims in Counts IV and V relating to La Villita, Metro Partners, Houston Land, and Pueblo Villas as barred by the applicable statute of limitations. We grant the motions of Long Grove, Much Shelist, and S & F to dismiss Counts XI, XII and XIII respectively as barred by the applicable statute of limitations.

We also partially grant the motions of Richards, Hermann, and Long Grove to dismiss Counts I–VII for failing to adequately allege loss causation, but only as to La Villita, Houston Land, and Pueblos Villas. The motions are denied with respect to Metro Partners, and Metro Uptown. We further deny Richards' and Hermann's motion to dismiss Count V for failing to allege public injury or general harm. We grant the motions of Long Grove, Much Shelist, and S & F to dismiss Counts XI, XII and XIII respectively for failure to state a claim for aiding and abetting in securities fraud.

Finally, we deny Lewis' motion to strike certain portions of Hermann's answer to Count X of the amended complaint, but grant Lewis' motion for judgment on the pleadings on Count X. It is so ordered.

---

**18.** In his response to Lewis' motion, Hermann further implies a lack of consideration for the guarantee. As this particular claim was not alleged as grounds for his affirmative defense, we disregard it, though we note that this contention, too, is belied by the plain terms of the guaranty by which Hermann acknowledges receiving "good and valuable consideration" in exchange for providing the guaranty and "deriv[ing] or expect[ing] to derive a financial advantage" from any loan made by Lewis to Metro Uptown.