THOMAS H. FLYNN, Executor, etc., of Thomas Morgan, Plaintiff in Error, *v.* MUDD & HUGHES, and FRANCIS KEYS, Defendants in Error.

ERROR TO SCOTT.

An agreement, between the holder of a note and the principal, to extend the time of payment for a definite period which is founded upon a good consideration, will discharge the surety; unless the surety consents to the agreement at the time, or subsequently ratifies it.

To enable a surety to interpose the defense to a note that further time has been given to his principal, it is not necessary that his name should appear upon the note as surety; it will be sufficient if he was actually a surety, and this was known to the payee when the note was executed.

The payment of interest upon a note in advance, is a sufficient consideration to support an agreement for an extension of time to the principal, so as to discharge the surety.

Where the plaintiff introduces in evidence a note which has indorsed upon it, an agreement extending the time for payment, he will be bound by the agreement although it is not signed by him.

THIS was an action of assumpsit, brought by Thomas Morgan, plaintiff, in the Circuit Court of Scott county, at the December special term, 1858, on a promissory note, dated St. Louis, April 28, 1857, for $18,000—made by the defendants,

payable to the order of one Wm. T. Hazzard, in four months after date, and by him assigned to said plaintiff. Process served on Francis Keys only, and by consent tried before Woodson, Judge, without a jury. Judgment rendered against said plaintiff in the court below for costs. A writ of error is now brought by Thomas H. Flynn, executor of the last will and testament of said Thomas Morgan, since deceased, to this court.

The declaration contains three special counts—for the note, interest and damages on protest, and the usual money counts.

The defendant Keys, besides the plea of non-assumpsit, filed two special pleas, in substance the same, in which he alleges, that he was simply security of Mudd & Hughes on said note, which the said plaintiff knew at the time he took the note; and that after plaintiff received said note, and before its maturity, to wit, on the 6th day of August, 1857, at St. Louis, Mo., said plaintiff agreed with said firm of Mudd & Hughes, that if they would pay him in advance the interest on said note up to the 28th day of March, 1858, he would extend the time for the payment of said note to said 28th March, 1858; and in pursuance of said agreement, the said firm of Mudd & Hughes did pay, on the 6th day of August, 1857, the plaintiff, in advance, the interest on the amount of said note up to the 28th March, 1858, to wit, the sum of $840; and in consideration thereof, the said plaintiff promised and agreed with the said firm to extend the time of payment of said note to the said 28th day of March, 1858. The said pleas then allege, that said Keys was in no way a party to said agreement, and it was made without his knowledge or consent.

To which special pleas the plaintiff filed a general demurrer, which the court overruled.

Whereupon the plaintiff, by leave of court, filed three replications, traversing the special pleas, and alleging that Keys was a principal on the note, and a joint payor of the same.

The following is the evidence adduced on the trial of said cause in the court below.

On behalf of the plaintiff, the note sued upon, to wit:

"$18,000.                              St. Louis, April 27th, 1857.

"Four months after date, we promise to pay to the order of William T. Hazzard, eighteen thousand dollars, for value received, negotiable and payable without defalcation or discount, at the Bank of the State of Missouri, with six per cent. interest for forfeiture from date, if not paid at maturity.

'MUDD & HUGHES.
FRANCIS KEYS."

Assignment on said note:

"Pay Thomas Morgan, or order.        WM. T. HAZZARD."

On behalf of the defendant, and excepted to by plaintiff in court below, *Adams*, witness, testified, that in the month of June, 1858, when and where the plaintiff, Fráncis Keys, and witness were present, in a conversation then and there between the plaintiff, Keys and witness, the said defendant stated that Francis Keys was security on the note sued upon in this case, and that plaintiff knew that fact at the time Keys signed it; that the said defendant, Keys, said that the note was signed by him after Mudd & Hughes had got the money for which the note was given, before he (Keys) signed the note, which plaintiff admitted; that the said Keys also stated, in the same conversation, in the presence of Morgan, that Mr. Grubb, one of the firm of Mudd & Hughes, requested him (Keys) to sign the note as security; and that at the same time Morgan had the note of Mudd & Hughes in his possession, and that afterwards, he (Keys) signed said note. That plaintiff, Morgan, stated in the same conversation, that he had extended the time of payment, and that Keys stated at the same time that he considered himself released from said note, because Morgan had extended the time of payment; and Morgan also stated, that he held Keys still bound to pay said note, and considered him as one of the principals on said note; and Morgan also further stated, that he would not have let Mudd & Hughes have the money for which the note was given without Keys signing said note. The witness also stated, that Morgan did not say that he received any consideration from Mudd & Hughes for extending the time of payment of said note.

Memorandum on the back of note sued upon, adduced in evidence by defendant, and excepted to by plaintiff in court below:

"Received of Mudd & Hughes payment in full for the interest on the within note to the 28th day of March next, at which time this note is to be due and payable; if not paid at that date, to draw interest according to the face and tenor of said note.

"St. Louis, August 6th, 1857."

Which was all the evidence in the case. Whereupon the court below rendered judgment against said plaintiff, and in favor of said Keys, for costs.

J. H. Berry, and I. L. Morrison, for Plaintiff in Error.

M. Hay, and N. M. Knapp, for Defendants in Error.

WALKER, J. The doctrine, that giving further time to the principal debtor, by a valid agreement, without the assent of the surety, releases him from the contract, seems to be universally admitted and acted upon. Yet a diversity in the practice, as to the mode in which the surety may avail himself of the defense, exists in different courts. In some it is held, that the remedy is alone in chancery, unless it appears upon the face of the instrument, that he bears that relation to the contract, whilst in others it is held, that the fact that he is a surety may be averred and proved, although he appears as a principal.

In Great Britain the former rule appears to prevail, but on this side of the Atlantic, every defense which discharges the surety in equity, has generally been recognized as admissible in courts of law. There are, however, some of our courts that follow the English practice, although compared with the others, they are few in number. To render such a defense available, it is necessary that the contract extending the time for payment, should be such as would prevent the creditor from maintaining an action, on the original agreement, before the expiration of the extended time. To have that effect, it must be based upon a sufficient consideration, and must be for a definite period. *Gardner* v. *Watson*, 13 Ill. 347. But possessing these requisites, it must also have been entered into, between the principal debtor and the creditor, without the consent of the surety, or his subsequent ratification, to constitute a valid defense. And this defense is based on the principle, that the surety can only be held to perform the precise terms of his contract. He cannot be charged by the acts of others, beyond the terms of his agreement.

When he has agreed, that his principal shall pay money, or perform any other act, by a specified day, the change of time to a different day, is not the agreement into which he entered, and to enforce its performance, would be to permit other and unauthorized persons to make for him a contract. The principle is universally recognized, that any unauthorized alteration of an agreement, will release all parties, not assenting to or ratifying the change. And the surety must undeniably have the same right to interpose the same defense, when the terms of the agreement into which he has entered have been changed by other parties.

Again, any alteration, by which the rights of a surety are impaired, or the possibility of his resorting to them is delayed, places him in a different situation from that which he originally occupied. It might also impose upon him the whole burthen of the obligation, and deprive him of resorting to

Flynn, Ex'r, etc., *v.* Mudd & Hughes *et al.*

means of indemnity to which he looked, if the principal should in the meantime become insolvent. After the time for the performance has elapsed, the surety has the right to resort to equity, to compel the principal to proceed to the enforcement of the contract, or he may himself discharge it and look to his principal for indemnity. These are his legal rights, and to which he is supposed to look, when he assumes his liability, and to deprive him of them, might work great injustice and flagrant wrong. The necessary consequence of so extending the time, is the release of the surety, whatever the form of the contract, and whether the extension has been made before or after a breach. *Warner* v. *Campbell*, 26 Ill. 282. And we have seen that it is held by the greater number of the tribunals of this country, that such a defense may be made in a court of law.

This rule can work no injustice, as the creditor, if unwilling to release the surety, has only to refrain from entering into an agreement to give further time without the assent of the surety. The mere neglect to sue at the maturity of the contract, or even giving further time by an agreement not binding on the creditor, does not produce a release of the surety, as he may still compel the creditor to proceed to the enforcement of the agreement, or may discharge it, and resort to his remedy against his principal for his ultimate indemnity. By such an agreement he is deprived of none of his remedies, and is subjected to no new conditions, hazards or losses outside of his original undertaking.

Then was the agreement, to postpone the payment in this case, of such a character as released the defendant Keys? The evidence satisfactorily shows, that he was only a surety, and that the payee was aware of that fact at the time the instrument was executed. He admitted, that the money was loaned to defendants Mudd & Hughes, before Keys executed the note. He likewise admitted in the same conversation, that he had extended the time of payment. It also appears, that there was indorsed on the back of the note this memorandum: "Received of Mudd & Hughes, payment in full, for the interest on the within note, to the 28th day of March next, at which time this note is to be due and payable; if not paid at that date, to draw interest according to the force and tenor of said note. St. Louis, August 6th, 1857."

It is manifest from this evidence, that defendant Keys was only a security on the note. And we think it equally clear, that the advance interest was paid as the consideration, and to procure an extension of time, until the 28th of March, 1858. Morgan admitted an extension of time, and this memorandum

found upon the back of the note, shows that such was the fact, as well as the period to which it was extended. It is, however said, that it was not signed by the payee, and is for that reason not binding. No one will for a moment doubt, that it is a sufficient receipt for the interest which accrued, prior to the 28th of March following. And why? Because it comes from the possession of the holder, and if it was untrue or improper, it would have been obliterated. It was in the possession and under the control of the person against whom it operated, and it must be supposed to be correct. And for the same reason the presumption must apply to every part of the indorsement unless rebutted, which has not been done.

At the time this interest was paid, the note had just matured, and it was not designed as a payment on the principal, because it was limited to the accruing interest. This excludes the inference that it was designed, or may be treated as a payment on the principal. This interest paid to the creditor in advance, was a benefit to him, and was therefore a sufficient consideration, to support the agreement to extend the time of payment. Had suit been instituted for the collection of the principal before the expiration of the time, this agreement would have defeated a recovery. And if so, Keys had no legal means of compelling Morgan to proceed for its collection, or to have himself paid the money, and proceeded against the principal debtors for indemnity, before the time had elapsed. By this agreement he was effectually prevented from resorting to those remedies, which he doubtless had in contemplation when he became a surety. Upon this entire record, after a careful examination, we are unable to perceive any error for which the judgment should be reversed, and it is therefore affirmed.

*Judgment affirmed.*