**KEENE CORPORATION,**
Plaintiff-Appellee,

v.

**INTERNATIONAL FIDELITY
INSURANCE COMPANY,**
Defendant-Appellant.

No. 83–1492.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 17, 1984.

Decided May 29, 1984.[*]

Opinion June 13, 1984.

---

[*] This appeal was originally decided by unreported order on May 29, 1984. *See* Circuit Rule 35. The panel has subsequently decided to issue the decision as an opinion.

Thomas S. Novak, Sills, Beck, Cummis, Zuckerman, Radin & Tischman, Newark, N.J., for defendant-appellant.

Richard L. Horwitz, David J. Chroust, Drendel, Schanlaber, Horwitz & Oakes, Aurora, Ill., for plaintiff-appellee.

Before CUMMINGS, Chief Judge, COFFEY, Circuit Judge, and BEATTY, District Judge.**

CUMMINGS, Chief Judge.

The appeal in this diversity suit involves a dispute between defendant-appellant International Fidelity Insurance Company ("Fidelity"), a surety, and plaintiff-appellee Keene Corporation ("Keene"), its obligee, in regard to two surety agreements guaranteeing contract performance by Chicago Automatic Machine, Inc. ("Chicago Automatic"). The district court granted Keene's motion for summary judgment, holding that Fidelity is obligated to reimburse Keene pursuant to both surety agreements, and we affirm.

## I

In October 1978 Keene's Kaydon Bearing Division, an automotive equipment producer, agreed to purchase from Chicago Automatic a 20-spindle rotary assembly machine, tooled to assemble Keene's roller bearings. The purchase order called for delivery to one of Kaydon's Muskegon, Michigan, plants by the week of March 26, 1979. The purchase order specified a purchase price of $149,000 and a payment schedule.[1] At Chicago Automatic's behest,[2] Keene purchased a performance bond from Fidelity, paying a premium of 2% of the purchase price. Under the performance bond, Fidelity unconditionally guaranteed Chicago Automatic's performance under the contract, with a maximum liability of $149,000.

Keene made the following payments to Chicago Automatic: $7,500 on October 19, 1978 (5% of the purchase price) and $29,800 on November 14, 1978 (20% of the purchase price). Shortly after Chicago Automatic received Keene's purchase order, the issue arose as to where the induction heating system, a component of the roller-bearing machine, would be acquired. Chicago Automatic's initial proposal had specified a Lepel system or equivalent; Chicago Automatic later inquired whether Keene knew of any manufacturers other than Lepel that produced induction heating systems. As a result of that inquiry Chicago Automatic learned of Pillar Corporation ("Pillar"), to whom Chicago Automatic then subcontracted that portion of the work.

In the meantime Keene informed Chicago Automatic of its need for a machine tooled to assemble its unitized thrust bearings. After negotiations, Keene accepted Chicago Automatic's proposal to manufacture a thrust-bearing machine by issuance of a purchase order dated February 5,

---

** The Honorable William L. Beatty, United States District Judge for the Southern District of Illinois, is sitting by designation.

1. The roller-bearing machine payment schedule is as follows:
   5% on receipt of order;
   20% thirty days after receipt of order;
   25% on completion of hardware;
   35% on approval of samples;
   15% thirty days after receipt of machine.
   Roller-Bearing Machine Purchase Order, Defendant's App. at 41.

2. Throughout the period of the transaction, Fidelity or its principal shareholder owned all of Chicago Automatic's assets.

1979. Delivery was scheduled for the week of August 6, 1979, and the purchase order specified a payment schedule.[3] Again Fidelity issued a performance bond in the amount of the contract price ($135,000) contemporaneously with the contract, unconditionally guaranteeing Chicago Automatic's performance. This time, however, Keene's recovery in the event of Chicago Automatic's default was limited to recapture of the monies advanced by Keene. Keene paid Chicago Automatic $33,750 (25% of the purchase price) upon Chicago Automatic's receipt of the order.

Early in 1979 Chicago Automatic began experiencing difficulty in manufacturing the roller-bearing machine due to, in part, the inadequacy of Pillar's induction heating system. Chicago Automatic requested time extensions and Keene acceded to the requests. Apparently Fidelity was not apprised of the delays and extensions in regard to the roller-bearing machine until March 1980. In June 1979 Chicago Automatic also requested a ten-week extension for completing the thrust-bearing machine. Keene acceded to the request, notifying Fidelity of the extension by forms supplied by Fidelity dated August 1, 1979 and September 18, 1979.[4] The revised completion date for the thrust-bearing machine was set at October 31, 1979. Chicago Automatic failed to meet this deadline.

Despite Chicago Automatic's delays in completing the hardware, in September 1979 Keene made a third progress payment to Chicago Automatic in the amount of $33,750 in connection with the roller-bearing contract, and in October 1979 made a second progress payment in the same amount in connection with the thrust-bearing contract.

Frustrated by the continuing delays, Keene wrote Chicago Automatic on February 8, 1980, stating that it would "probably have no choice but to call the performance bonds" if the thrust machine were not completed by April 7 and the roller-bearing machine by May 5.[5] Further communication between Keene and Chicago Automatic ensued, including Keene's recommendation that Chicago Automatic focus its efforts on the thrust-bearing machine, with the week of May 2 as the revised completion date. Chicago Automatic responded to this recommendation with a proposed completion date of May 16 for the thrust-bearing machine. Meanwhile Keene wrote Fidelity on March 6, 1980, advising it of Chicago Automatic's failure to make timely completion and delivery of the two machines and inquiring of the "necessary procedure should we be forced to resort to the Bonding to recover our investment."[6] Fidelity's attorney Richard Caifano responded by letter March 26, referring to an "agreed * * * revised completion schedule for the machines presently being assembled by Chicago Automatic," calling for "substantially full completion on May 16, 1980."[7] Caifano asked for confirmation of Keene's acquiescence in that schedule revision.[8] On April 29, 1980, Caifano advised Keene that Fidelity would treat its obligations under the performance bonds as terminated on the grounds that Keene and Chicago Automatic had allegedly entered into a "novation agreement calling for the extension of compliance with specifications of the original purchase orders," and that Fidelity had not "approved or acquiesced in that extension."[9]

Chicago Automatic failed to complete on May 16, whereupon Keene demanded payment from Fidelity under the two perform-

---

**3.** The thrust-bearing machine payment schedule is as follows:
   25% on receipt of order;
   25% on completion of hardware;
   35% on approval of samples;
   15% thirty days after receipt of machine.
   Thrust-Bearing Machine Purchase Order, Defendant's App. at 67.

**4.** Defendant's App. at 162–163.

**5.** Ex. 11.

**6.** Ex. 14.

**7.** Ex. 16.

**8.** *Id.*

**9.** Ex. 17.

ance bonds. Fidelity ignored the demand and Keene brought this action on September 17, 1980, in the district court for the Southern District of New York. Fidelity subsequently obtained a change of venue to the Northern District of Illinois.[10]

Count 1 of Keene's complaint sought the full $149,000 obligation of the roller-bearing machine performance bond because Keene's asserted damages of $287,400 resulting from the breach of the roller-bearing contract far exceed that amount. In principal part these asserted damages consist of (1) $71,050 in progress payments to Chicago Automatic and (2) $187,920 in lost profits that Keene allegedly would have realized from the sale of roller bearings to Chrysler Corporation during the period July 1979 through December 1980.[11] Count 2 sought reimbursement under the thrust-bearing machine bond for the $67,500 advanced to Chicago Automatic. Count 3 requested punitive damages in connection with Fidelity's alleged bad faith refusal to discharge its suretyship obligations.

Keene moved for partial summary judgment on Counts 1 and 2. In opposing the motion, Fidelity conceded that Chicago Automatic defaulted on both contracts. Fidelity raised two affirmative defenses: (1) "The modifications to the agreements here * * * took place without the approval of the surety" (Defendant's Mem. In Opp. to Plaintiff's Motion For Partial Summary Judgment, Point II, at 10, Plaintiff's App. at 249); and (2) "The relationship between plaintiff and Pillar Corp. bars any right of plaintiff to summary judgment" (*Id.* Point III, at 23, Plaintiff's App. at 256).[12]

The district court granted Keene's motion for partial summary judgment, holding that Fidelity's affirmative defenses did not raise a material issue of law or fact. Regarding the first defense, the district court observed that Fidelity in 1979 received at least one notice of extension and failed to object; therefore any current objection to the revised schedules was in effect waived by Fidelity. Further, the court held that under Illinois law,[13] if the obligee of a surety bond gives the principal additional time to perform, the surety who has not consented to the extension is discharged unless the extension agreement was not founded on independent consideration. The court held that Fidelity did not establish any new consideration for Keene's willingness to defer the completion date. Regarding Fidelity's second defense, the court found no such relationship between Keene and Pillar that would negate Fidelity's obligation under the performance bonds. Because Fidelity apparently did not dispute the damages caused by Chicago Automatic's default, the court held Keene was entitled to the entire $149,000 obligation on the roller-bearing machine bond, as well as the $67,500 advanced on the thrust-bearing machine contract. Fidelity's motion for reconsideration was denied, and Fidelity appeals. For the reasons stated *infra,* we affirm the district court's order entering partial summary judgment in favor of Keene.

## II

Fidelity first reasserts its first argument in opposition to Keene's partial summary judgment motion, *viz.,* that Fidelity is discharged by virtue of the extensions of time for Chicago Automatic's performance. Although we have discovered no recent reported Illinois decisions addressing the issue, the district court correctly surmised that under Illinois law a compensated surety is not discharged by an

---

10. Fidelity filed a third-party complaint against Chicago Automatic in October 1980. In January 1981, Chicago Automatic filed a bankruptcy petition under Chapter 11 of the Bankruptcy Code. Consequently, the third-party action against Chicago Automatic has been stayed.

11. Affidavit of Patrick T. Kirk, ¶ 33(2), Defendant's App. at 28.

12. Defendant's Point I argued for change of venue, the motion being granted.

13. The parties do not dispute that Illinois law governs the transactions, for Chicago was the situs of the bonds' execution and Chicago Automatic's performance (or, as the district court noted, its nonperformance).

extension of time for performing the underlying contract unless the extension is supported by valid and sufficient consideration. *English v. Landon,* 181 Ill. 614, 619, 54 N.E. 911 (1899); *Flynn v. Mudd & Hughs,* 27 Ill. 323, 325 (1862); *Highland Park State Bank v. Sheahen,* 149 Ill.App. 225, 229 (2d Dist.1909); *Truesdell v. Hunter,* 28 Ill.App. 292, 296 (2d Dist.1888). Fidelity argues that the time extensions on the roller-bearing machine were granted in consideration of "the failure of Pillar and of Chicago Automatic's agreement to proceed with the thrust machine on a priority basis" (Defendant's Br. at 15). Pillar's failure to construct an adequate induction heating system, however, can hardly be viewed as valuable consideration. And Chicago Automatic's efforts to complete the thrust-bearing machine amount to that which Chicago Automatic was already obligated to perform under the original thrust-bearing machine contract. Under Illinois contract law, the performance by the obligor of an act which it already is required by contract to perform is not sufficient consideration to establish a new agreement. *Moehling v. W.E. O'Neil Construction Co.,* 20 Ill.2d 255, 170 N.E.2d 100 (1960); *Trisko v. Vignola Furniture Co.,* 12 Ill.App.3d 1030, 299 N.E.2d 421 (1st Dist.1973).

Fidelity raises a different strain of Illinois surety law addressing contract extensions. Where the obligee of a surety bond, by agreement with the principal and without the consent of the surety, gives additional time for performance of the obligation by the principal, the surety is discharged to the extent of the injury accruing to it as a result of the modification. *E.g., Securities and Exchange Commission v. H.L. Rodger & Bro.,* 444 F.2d 1077, 1081 (7th Cir.1971) (Illinois law); *Gunsul v. American Surety Co.,* 308 Ill. 312, 322, 139 N.E. 620 (1923). This court recognizes the vitality of this rule under Illinois law and the likelihood that in some cases the application of this rule will produce different results vis-a-vis the aforementioned lack of additional consideration rule. But in this case the result is the same under either rule. Regarding Fidelity's consent, Keene notified Fidelity in writing of Chicago Automatic's production difficulties on two occasions in 1979.[14]

The status reports submitted to Fidelity stated there was a problem and reported a formal performance extension regarding the thrust-bearing machine. Fidelity never objected to the contents of these reports or to the October 1979 extended completion date stated in these reports. The record also indicates that Fidelity never conducted any inquiries in response to these reports. The conclusion is unavoidable that Fidelity had actual knowledge of and tacitly consented to this significant extension. Fidelity correctly points out that the status reports submitted to Fidelity in 1979 referred to the thrust-bearing machine and its extended completion date, and did not refer to any extensions regarding the roller-bearing machine. Fidelity's attempt, however, to limit the significance of the 1979 status report notifications is highly formalistic; it is incontrovertible that these reports served to notify Fidelity on two occasions in 1979 of Chicago Automatic's production delays, irrespective of whether the status reports specifically referred to one machine or both.

Even if this Court were to view Fidelity's acquiescence strictly in reference to that particular extension regarding the thrust-bearing machine, Fidelity's argument is insufficient for the fundamental reason that for a surety to be discharged on its obligation, the surety must establish injury accruing to it as a result of the performance extension. *Securities and Exchange Commission v. H.L. Rodger & Bro., supra; Gunsul v. American Surety Co., supra.* It is manifest that Chicago Automatic's failure to construct the machines is the cause of Fidelity's "injury" or liability, not the time extensions. When Chicago Automatic was unable to meet the original March 26, 1979, completion date for the

**14.** See note 4 *supra* and accompanying text.

roller-bearing machine and the original August 6, 1979, completion date for the thrust-bearing machine, Chicago Automatic as principal was technically in default, and Keene possessed the immediate right to call the performance bonds. Instead Keene, with the knowledge that production delays in connection with such sophisticated machinery are not uncommon, coupled with the hope that Chicago Automatic would persevere, agreed to the requests for additional time. Acceding to Chicago Automatic's requests therefore gave Chicago Automatic an opportunity, though ultimately unsuccessful, to cure the defaults and extinguish Fidelity's liability on its performance bonds. The time extensions granted by Keene therefore do not form the basis of a discharge on the performance bonds.

### III

■ Fidelity contends that Pillar, which failed to produce an adequate induction heating system component to be used in the roller-bearing machine, acted as Keene's agent, and that this agency relationship relieved Fidelity of liability in regard to the roller-bearing machine. The record indicates, however, that Keene, when asked by Chicago Automatic, at most recommended to Chicago Automatic that Pillar was a possible manufacturer of the induction heating system. It was Chicago Automatic, not Keene, that subcontracted the work to Pillar. On the basis of the record, Keene's involvement with Pillar does not come close to the degree of control over Pillar which would give rise to an agency relationship. See, *e.g.*, *Komel v. Commonwealth Edison Co.*, 56 Ill.App.3d 967, 971–972, 14 Ill.Dec. 563, 372 N.E.2d 842 (1st Dist.1978).

### IV

Fidelity also challenges the award of lost profits in conjunction with the roller-bearing machine, and argues that an issue of material fact exists as to whether Fidelity

is discharged to the extent of $33,750 on both performance bonds, *i.e.*, the amount of the third progress payment for the roller-bearing machine and the second progress payment for the thrust-bearing machine. These final progress payments were made on September 7, 1979 and October 12, 1979, respectively, subsequent to the original completion dates, but prior to the completion of the hardware. The original contracts specified that these payments [15] would be made upon completion of the hardware. Fidelity argues that these payments violated the terms of the contracts, decreased Chicago Automatic's incentives to perform, and increased Fidelity's liability.

■ These arguments, however, were not presented before the district court in opposing Keene's summary judgment motion and therefore cannot be presented for the first time on appeal. It is axiomatic that arguments not raised below are waived on appeal. *E.g.*, *Country Fairways, Inc. v. Mottaz*, 539 F.2d 637, 642 (7th Cir.1976), *Federal Savings & Loan Insurance Corp. v. Quinn*, 419 F.2d 1014, 1019 (7th Cir.1969). Fidelity refers us to specific pages of its memorandum in opposition to Keene's motion for partial summary judgment and its statement of material facts at issue pursuant to the Southern District of New York's Local Rule 3(g). Any mention therein of Keene's lost profits and the disputed progress payments is insufficient to form the basis of the legal and factual arguments Fidelity now asserts. These arguments were also presented to the district court in Fidelity's motion for reconsideration, which was denied by the district court. We adopt the district court's memorandum opinion and order, 561 F.Supp. 656, denying the motion for reconsideration, which more fully addresses the lost profit and progress payment issues.

### V

The judgment of the district court is affirmed.

---

**15.** Under the terms of the roller-bearing machine contract, the third progress payment was contemplated to be $37,250 (25% of $149,000), slightly more than the actual $33,750 paid.