Edmund J. LEWIS, M.D., individually and as Trustee for Edmund J. Lewis, M.D. & Associates, S.C., Defined Benefit Pension Trust, Edmund J. Lewis, M.D. & Associates, S.C., an Illinois corporation, and American Medical Supply Corporation, an Illinois corporation, Plaintiffs,

v.

Richard C. HERMANN, R.C. Hermann & Associates, C.P.A., Traverse Realty and Development Corporation, an Illinois corporation, Charles J. Richards, River North Securities Corporation, an Illinois corporation, Much Shelist, Freed, Denenberg, Ament & Eiger, P.C., Schwartz & Freeman, and Long Grove Trading Co., Defendants.

No. 89 C 4576.

United States District Court, N.D. Illinois, E.D.

Dec. 19, 1991.

Lawrence R. Samuels, Patrick John Ahern, Robert J. Pristave, Ross & Hardies, P.C., Chicago, Ill., for plaintiffs.

Joel F. Handler, Clifford E. Yuknis, Barry B. Gross, Tami J. Diamond, Shefsky & Froelich, Ltd., George A. Zelcs, Gary Kostow, Richard M. Kaplan, Clausen, Miller,

Gorman, Caffrey & Witous, P.C., Stephen Novack, Donald A. Tarkington, Novack & Macey, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Plaintiffs Dr. Edmund J. Lewis, individually and as Trustee for Edmund J. Lewis, M.D. & Associates, S.C. defined Benefit Pension Trust, Edmund J. Lewis, M.D. & Associates, S.C., and the American Medical Supply Corporation (hereinafter collectively referred to as "Lewis") have filed a motion for reconsideration of our ruling of September 13, 1991. *See Lewis v. Hermann*, 775 F.Supp. 1137 (N.D.Ill.1991). In addition, Lewis now moves for leave to file a second amended complaint. For the reasons as set forth below, we deny both motions.

### I. Motion for Reconsideration

■ It is settled law that motions for reconsideration "serve a limited function: to correct manifest errors of law or fact or to present newly discovered evidence." *Publishers Resource, Inc. v. Walker–Davis Publications, Inc.*, 762 F.2d 557, 561 (7th Cir.1985) (quoting *Keene Corp. v. International Fidelity Ins. Co.*, 561 F.Supp. 656, 665–66 (N.D.Ill.1982), *aff'd*, 736 F.2d 388 (7th Cir.1984)). As such, a motion for reconsideration may not be employed as a vehicle to introduce new evidence that could have been produced prior to the entry of judgment. *Id.* "Nor should a motion for reconsideration serve as the occasion to tender `new legal theories for the first time." *Id.*

Lewis' first ground for reconsideration revolves around this court's retroactive application of the 1–and–3–year limitations period adopted in *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, ––– U.S. –––, 111 S.Ct. 2773, 115 L.Ed.2d 321 (1991), and *Short v. Belleville Shoe Mfg. Co.*, 908 F.2d 1385 (7th Cir.1990), *cert. denied*, ––– U.S. –––, 111 S.Ct. 2887, 115 L.Ed.2d 1052 (1991). Specifically, Lewis contends that the court did not address "plaintiffs' argument that the time-honored

analysis in *Chevron Oil v. Huson* [404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971)] does not require that a plaintiff have actually relied on the prior precedent being overturned." Lewis, however, misinterprets our prior analysis. To be sure, this court did address Lewis' arguments under *Chevron Oil*, concluding, contrary to Lewis' position, that the application of the new rule to the litigants in both *Short* and *Lampf* dictated a retroactive application of the repose period to all pending actions. *See Lewis*, 775 F.Supp. at 1144 (citing both *Chevron Oil* and *Charette v. Emanuel*, No. 89–6497, slip op., 1990 WL 86039 (N.D.Ill. June 12, 1990) (applying *Chevron Oil*)). Indeed, the Supreme Court in *Lampf* applied the 1–and–3–year limitation retroactively to the litigation in which the new rule was announced despite the fact that the plaintiff had justifiably relied on Oregon's 2–year statute under state-borrowing principles. *Lampf*, 111 S.Ct. at 2782–83. As discussed in our order of September 13, 1991, the issue of reliance only arises as an exception to retroactive application in those rare cases where "a plaintiff learned of a claim within the three-year period but, relying on existing law providing for a longer limitations period, elected to wait until after the three-year period before filing suit." *Lewis*, 775 F.Supp. at 1146 (quoting S & F Reply at 3). Accordingly, this court's analysis regarding the retroactivity of *Lampf* and *Short* does not afford Lewis with an opportunity for reconsideration.

Second, Lewis claims that, in concluding that Charles Richards did not owe a fiduciary duty to the plaintiffs, this court "did not appear to consider the plaintiffs' argument that their allegation of Richards' role as an investment adviser to the plaintiffs created a fiduciary duty." Lewis is mistaken. In response to plaintiffs' argument, this court explicitly noted the Lewis had a "longstanding relationship of trust with Richards." *Lewis*, 775 F.Supp. at 1148. We, however, did not deem this relationship sufficient to establish a fiduciary duty. More to the point, we ultimately concluded that, *"even assuming Richards was ... a fiduciary*, Lewis nevertheless has failed to

additionally allege a basis from which we might infer that, having purportedly committed fraud in the sale of both investments, Richards ... took measures to actively conceal the fraud from Lewis." *Id.* (emphasis supplied). In the absence of any manifest error of law or fact, reconsideration of whether Richards owed plaintiffs a fiduciary duty is not warranted.

Lewis' next ground for reconsideration focuses on whether plaintiffs' allegations with respect to the La Villita, Pueblo Villas, and Houston Land investments were sufficient to allege loss causation. Lewis' current contention is limited to the assertion that

these allegations can be the basis for both transaction causation and loss causation in that neither La Villita, Houston Land, nor Pueblo Villas had a realistic chance of profit or success because the undisclosed commissions and conflicts of interest deprived each investment of the necessary funds to meet its financial commitments, including high levels of debt due to the highly leveraged nature of the investment and operating expenses.

However, as noted by Lewis, the court expressly considered the plaintiffs' allegations concerning the undisclosed commissions and conflicts of interest, concluding that those allegations were insufficient to establish loss causation. 775 F.Supp. at 1151 n. 12. This mere reassertion of an argument previously considered in the September 13, 1991 order mocks the well-established standards for reconsideration. *In re Stotler & Co.*, No. 91–1178, slip op. at 2, 1991 WL 268051 (N.D.Ill. Dec. 3, 1991) (A motion for reconsideration "serves no function at all if it is used merely to reiterate arguments previously raised."); *Above the Belt, Inc. v. Mel Bohannan Roofing, Inc.*, 99 F.R.D. 99, 101 (E.D.Va. 1983) (same); *see also Quaker Alloy Casting Co. v. Gulfco Indus., Inc.*, 123 F.R.D. 282, 288 (N.D.Ill.1988) ("[T]his Court's opinions are not intended as mere first drafts, subject to revision and reconsideration at a litigant's pleasure.").

In a similar vein, Lewis claims that, contrary to this court's assertion, *see Lewis*, 775 F.Supp. at 1151, plaintiffs did not concede that loss causation is an element of Counts II–VII. Rather, Lewis contends that footnote 8 in his response to Richards was merely an alternative argument that, if the court found that loss causation is an element of those claims, plaintiffs have satisfied it. We disagree. Footnote 8 states:

For the same reasons that plaintiffs have adequately alleged loss causation as to their claim under Section 10(b), plaintiffs have also adequately alleged loss causation for their claims under ERISA (Count II), common law fraud (Count III), the Illinois Securities Act (Count IV), the Illinois Consumer Fraud Act (Count V), breach of fiduciary duty (Count VI), and negligent misrepresentation (Count VII).

This footnote is devoid of any language even remotely suggesting that this is an argument in the alternative. Further, the disingenuous nature of Lewis' current claim is highlighted by the fact that nowhere in his response did Lewis assert that loss causation is not an element of Counts II–VII.

Finally, Lewis asks this court to reconsider our conclusions with regard to the aiding and abetting claims against the law firms Schwartz & Freeman ("S & F") and Much, Shelist, Freed, Denenberg, Ament & Eiger, P.C. ("Much Shelist"). As noted in our order dated September 13, 1991, both law firms' "liability for aiding and abetting ultimately must rest on a duty to disclose." *Lewis*, 775 F.Supp. at 1153. Lewis now suggests that "the court did not appear to address plaintiffs' argument that *Barker [v. Henderson, Franklin, Starnes & Holt*, 797 F.2d 490 (7th Cir.1986)]* is limited to the mere 'bystander' lawyer." However, as Lewis concedes, "the plaintiffs' briefs on the issue of aiding and abetting against [each firm] engaged in an extensive argument regarding the holding of *Barker* and its proper scope." As did plaintiffs, we too considered the scope to be afforded *Barker*; we simply did not reach the same result. Based on the allegations of plaintiffs' first-amended complaint, we concluded that S & F and Much Shelist were merely "by-

stander" law firms. Notwithstanding his continuing protest, Lewis has not set forth any newly discovered evidence that would warrant reconsideration.

Accordingly, Lewis' motion for reconsideration is denied.

## II. Motion for Leave

■ In order to remedy defects in the first-amended complaint, Lewis now requests leave to file a second amended complaint. The standard governing this motion is undisputed: A plaintiff should not be denied the opportunity to amend its complaint unless it is clear that the amended complaint cannot state a claim. *Textor v. Board of Regents*, 711 F.2d 1387, 1391 (7th Cir.1983); *Rohler v. TRW, Inc.*, 576 F.2d 1260, 1266 (7th Cir.1978); *Universal Mfg. Co. v. Douglas Press, Inc.*, 770 F.Supp. 434, 435 (N.D.Ill.1991); *Hagstrom v. Breutman*, 580 F.Supp. 773, 775 (N.D.Ill. 1984). Because the proposed second amended complaint fails to cure any of the defects found by this court, we deny Lewis' motion for leave.

■ On September 13, 1991, this court dismissed as untimely filed Counts III, VI, and VII as they related to the La Villita and Metro Partners investments, Count IV as it related to La Villita, Metro Partners, Houston Land, and Pueblo Villas, and Count V as it related to La Villita, Metro Partners, Houston Land, and Pueblo Villas. *Lewis*, 775 F.Supp. at 1147–49. The dismissal of these counts turned in part on Lewis' failure to plead fraudulent concealment. In paragraphs 41(a)–(b),[1] 48(a)–(b), 53(a)–(b), 59(a)–(b), and 63(a)–(b) of the second-amended complaint, Lewis attempts to set forth allegations of fraudulent concealment. Specifically, Lewis alleges that he had received many oral and written assurances from Hermann and Richards indicating that each investment "was a good investment" and was "on track and going well." With regard to Richards, however,

plaintiffs bear an affirmative duty of due diligence. *Lewis*, 775 F.Supp. at 1148. The due diligence requirement compels more than the mere assertion that: (1) "the earliest date that Dr. Lewis could have known, through the exercise of reasonable diligence, of the fact that the Metro Partners investment was in trouble was on April 29, 1988, when Metro Partners filed for bankruptcy" (Second Amended Complaint at ¶ 48(b)); and (2) "[t]he first notice that Dr. Lewis received that contained any information that the Houston Land investment was in trouble was Houston Land's bankruptcy filing on September 2, 1988." *Id.* at ¶ 53(a).[2] Due diligence, if it is to retain any significance, must entail active inquiry by the plaintiff. *See Davenport v. A.C. Davenport & Son Co.*, 903 F.2d 1139, 1142 (7th Cir.1990). In the absence of allegations that Lewis made such inquiries or otherwise exercised due diligence to determine the true financial status of each investment, the second amended complaint fails to cure the defects in Counts III–VII that resulted in the partial dismissal of these claims against Richards. Furthermore, even assuming Richards may be a fiduciary of Lewis, the second amended complaint fails to plead active concealment on the part of any of the defendants. Active concealment demands more than mere assurances that the investments are "going well," or are "good investments." Lewis has not plead any facts indicating that, for instance, either Hermann, Lewis or any other fiduciary misrepresented material information after the purported fraudulent sale. That Lewis may have been lulled into a sense of security by his fiduciaries is insufficient to invoke the doctrine of fraudulent concealment. *See Davenport*, 903 F.2d at 1139; *Hupp v. Gray*, 500 F.2d 993, 997 (7th Cir.1974).

■ In paragraph 63(c) of the second amended complaint, Lewis attempts to al-

---

**1.** Any allegations of fraudulent concealment regarding the Metro Uptown investment is irrelevant to our current inquiry. Indeed, no claims regarding that investment were dismissed as part of our September 13, 1991 order. *See Lewis*, 775 F.Supp. at 1153–54.

**2.** We note that the second amended complaint does not allege that Richards participated in any fraudulent concealment concerning the La Villita or Pueblo Villas investments. *See* Second Amended Complaint at ¶¶ 59(a)–(b), 63(a)–(b).

lege loss causation in order to cure the defect that resulted in the partial dismissal of Counts I–VII as they related to La Villita, Houston Land, and Pueblos Villas. Paragraph 63(c) states:

> With regard to LaVillita, Pueblo Villas and Houston Land, the undisclosed commissions and conflicts of interest previously described robbed each investment of the upfront funds necessarsy [sic] to meet its financial commitments and investment objectives, and therefore, each investment did not have a realistic chance of success or profit from its inception.

However, as noted in our September 13, 1991 order, "allegations concerning undisclosed commissions and conflicts of interest bear only upon the issue of transaction causation." *Lewis*, 775 F.Supp. at 1151 n. 12. Accordingly, the additional allegations contained in paragraph 63(c) are insufficient to state the essential element of loss causation.

Respecting Count XI, the second amended complaint substitutes two new theories of liability against Long Grove Trading Co.: Section 20(a) of the Securities and Exchange Act of 1934, 15 U.S.C. § 78t, and respondeat superior. These new theories, however, are deficient. First, insofar as Lewis' § 20(a) claim is premised entirely on the Houston Land investment, such claim, like Lewis' § 10(b) and § 15(c) claims, is barred by the 1–and–3–year statute of repose. *See Lewis*, 775 F.Supp. at 1151 n. 13 (applying the *Lampf* and *Short* limitations rule to § 15(c) actions). Moreover, Lewis' failure to allege a primary violation of the federal securities law precludes a claim against Long Grove as a "controlling person" under § 20(a). *FMC Corp. v. Boesky*, 727 F.Supp. 1182 (N.D.Ill.1989). Likewise, Lewis' claim under the theory of respondeat superior fails to state a cause of action upon which relief may be granted. Recovery under this theory requires a showing that the agents had actual or apparent authority to engage in the wrongful acts. *Harrison v. Dean Witter Reynolds, Inc.*,

715 F.Supp. 1425, 1429–32 (N.D.Ill.1989). There is no dispute that the second amended complaint is devoid of such allegations.

Finally, Lewis attempts to buttress his aiding and abetting claims against Much Shelist and S & F.[3] On September 13, 1991, we dismissed these claims, concluding that each firms' "liability must ultimately rest on a duty to disclose." *Lewis*, 775 F.Supp. at 1153. Lewis' new allegations, *see* Second Amended Complaint ¶¶ 124, 125(a), 127(a) and 131, are unrelated to the issue of whether each firm owed Lewis a duty of disclosure, and therefore, do not change the fact that neither Count XII nor Count XIII state a cognizable claim.

Accordingly, we deny Lewis' motion for leave to file the submitted second-amended complaint.

### III. Conclusion

There being no manifest errors of law or fact, Lewis' motion for reconsideration of our September 13, 1991 order is denied. Furthermore, as the proposed second amended complaint fails to cure any of the defects found by this court, we deny Lewis' motion for leave. It is so ordered.

---

**3.** Under the second amended complaint, Count XI no longer contains a claim of aiding and abetting against Long Grove.