**In re COMDISCO, INC., et al., Debtors.**

**No. 01 B 24795.**

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division.

Jan. 3, 2002.

John Wm. Butler, Jr., George N. Panagakis, Chicago, IL, for the Debtor.

Roman Sukley, Chicago, IL, for the U.S. Trustee.

William J. Barrett, Gardner, Carton & Douglas, Chicago, IL, for Creditor's Committee (Local Counsel).

Richard G. Mason, Chaim J. Fortgang, New York City, for Creditor's Committee.

Ann Marie Bredin, Jones, Day, Reavis & Pogue, Chicago, IL, for DIP Lenders (Local Counsel).

Michael Bassett, Jones, Day Reavis & Pogue, New York City, for DIP Lenders.

Ronald W. Hanson, Latham & Watkins, Chicago, IL, for Pre–Petition Lenders.

David F. Heroy, Carmen H. Lonstein, Bell, Boyd & Lloyd, Chicago, IL, for Equity Security Holders (Local Counsel).

Edward S. Weisfelner, Scott M. Berman, New York City, for Equity Security Holders.

Adam J. Levitt, Wolf, Haldenstein, Adler, Freeman & Herz, Chicago, IL, for Peter Moser and Lead Plaintiff (Local Counsel).

Daniel W. Krasner, Lawrence P. Kolker, Wolf, Holdenstein, Adler, Freeman &

Herz, New York City, for Peter Moser and Lead Plaintiff.

### MEMORANDUM OPINION

RONALD BARLIANT, Bankruptcy Judge.

Before Comdisco, Inc., the Debtor in this case, filed its petition for relief under chapter 11 of the bankruptcy code, several people who had bought its common stock filed complaints in the district court against the Debtor and two individual defendants. They alleged that the defendants violated various securities laws by misrepresenting the Debtor's prospects and operations, thereby inflating its stock price. The various claims were all assigned to District Judge Milton I. Shadur, who joined them and the parties into a single action captioned "Comdisco Securities Fraud Class Action" He also designated Peter Moser (the "plaintiff") the lead plaintiff. The plaintiff purports to represent a class of "all purchasers of the common stock of Comdisco between January 25, 2000 and October 2, 2000."

Once all the initial procedural steps had finally been taken, it was time for an amended complaint consolidating the class claims in the single action. Before that complaint could be filed, however, the Debtor filed its chapter 11 petition on July 16, 2001, thereby imposing an automatic stay of any proceedings against the Debtor in the class action. See § 362(a).[1] Thereafter, according to the plaintiff, Judge Shadur at a series of status hearings, "strongly indicated his desire for Class Counsel to seek at least a partial modification of the automatic stay." Memorandum in Support of Stay Motion 4.[2] The plaintiff, by class counsel, then dutifully presented to this Court a motion for a limited modification of the stay, seeking only to be allowed to file an amended complaint against all the defendants, including the Debtor. (Of course, the automatic stay does not prevent the plaintiff from proceeding against the individual defendants.) Based on prior proceedings, everyone agrees that the defendants will respond to the amended complaint by filing Fed.R.Civ.Pro. 12(b)(6) motions to dismiss for failure to state a claim for relief. The plaintiff's motion sought only relief from the stay sufficient to allow the amended complaint and the Debtor's motion to dismiss to be filed, so that Judge Shadur could decide the motions of all the defendants at the same time.

This Court heard the plaintiff's motion to modify the automatic stay on November 28, 2001, and denied it with an oral ruling on the same day, immediately following the hearing.[3] Now the plaintiff has moved for a reconsideration of that denial, which this Court will treat as a Rule 59(e) motion to alter or amend its order. The present motion to reconsider is supported by a letter dated December 10, 2001, from Judge Shadur to the plaintiff's attorneys, with a copy to this Court. As the plaintiff's lawyer put it at the argument of the motion to reconsider, the act of sending such a letter was "extraordinary." There is, so far as this Court is aware, no rule that allows such a communication, nor does Judge Shadur have jurisdiction or standing in this case. Nevertheless, the plaintiff

---

1. Unless otherwise indicated, all statutory references are to the bankruptcy code, 11 U.S.C. §§ 101, *et seq.*

2. The full title of the document is Memorandum of Law in Support of Motion for an Order Pursuant to 11 U.S.C. § 362 for Relief From Automatic Stay.

3. The transcript of the hearing and this Court's ruling is attached to the plaintiff's motion to reconsider, and will be referred to as "Tr.—".

has adopted the letter as part of his argument and this Court will so regard it.[4]

■ The plaintiff moved under § 362(d)(1) to modify the automatic stay "for cause." It is intuitively obvious that determining whether cause exists to modify the stay to permit a lawsuit to proceed in another court requires a balancing of the costs and benefits of maintaining the stay. See *In re Fernstrom Storage & Van Co.*, 938 F.2d 731, 735 (7th Cir.1991) (applying test that includes prejudice to the debtor or estate if stay were modified and hardship to movant if stay were maintained).[5] It is also obvious from Congress's use of the undefined word "cause" that whether the stay should be modified to permit a lawsuit to proceed depends on the facts of the specific case. Congress did choose to specify and define one cause to modify the stay in all cases where it is found—lack of adequate protection of a property interest. See §§ 361, 362(d)(1). But it did not specify anything else that would be cause in all cases in which it existed. Therefore, cause to modify the stay to permit a lawsuit to proceed "is determined on a case-by-case basis." *Fernstrom*, 938 F.2d at 735, quoting *In re Tucson Estates*, 912 F.2d 1162, 1166 (9th Cir.1990).

■ Because the inquiry must be case-specific, copying and checking off lists of "factors" from other cases that had different facts is all but useless. As the 7th Circuit has recognized, "a list of factors without a rule of decision is just a chopped salad." *In re Synthroid Mktg. Litig.*, 264

F.3d 712, 719 (7th Cir.2001). This Court has previously rejected the factor-counting approach to judicial decision-making. *Chase Manhattan Bank v. Murphy (In re Murphy)*, 190 B.R. 327, 333 (Bankr. N.D.Ill.1995) ("the fact-finding process is only clouded by copying a list of factors from other cases and weighing evidence according to how well it matches that list.") The only factors that matter are those that arise from the circumstances of the present case, and even they must be weighed in the context of all the relevant circumstances.

■ This Court applied these principles when it denied the stay motion, having considered all the circumstances of this case, identified the most pertinent factors that arose from those circumstances, and weighed those factors in balancing the costs and benefits of maintaining the stay. The present motion for reconsideration invokes its own standard for decision. "Motions for reconsideration serve a limited function: to correct manifest errors of law or fact or to present newly discovered evidence." *Keene Corp. v. International Fidelity Ins. Co.*, 561 F.Supp. 656, 666 (N.D.Ill.1982)(Shadur, J.), aff'd, 736 F.2d 388 (7th Cir.1984). The plaintiff does not allege that there is newly discovered evidence; the narrow issue is whether this Court committed a manifest error of law or fact. It did not, as this opinion will demonstrate, and the motion to reconsider will be denied.

The first argument the plaintiff made in support of its position that cause exists to

---

**4.** The letter has been filed in this case as docket entry 1399. This Court has core jurisdiction over this matter under 28 U.S.C. § 157(b)(2)(G).

**5.** *Fernstrom* also lists the movant's probability of succeeding in the lawsuit as a factor, but that falls under the category of hardship resulting from the stay. If a claim is very weak, there is little hardship in staying its prosecution; if it is strong, the hardship is greater. In any event, there is no need to consider the merits of the securities fraud claim in order to decide the present motion, and this Court does not read *Fernstrom* as mandating such a consideration.

modify the automatic stay is that, if the stay is not modified, he would be faced with the risk of inconsistent decisions by Judge Shadur. That is, Judge Shadur might decide an issue one way on a motion to dismiss made by the individual defendants, and then, after this case is over and (presumably) the Debtor can be pursued in the class action again, Judge Shadur might decide the same issue differently when the Debtor raises it. This Court found that such a possibility is so remote as to be "academic" and not substantial cause to modify the stay. Judge Shadur, however, incorrectly accuses this Court and the parties of engaging in "mindreading" and points out the irrelevant fact that each defendant in a multi-defendant securities case might have a defense unique to that defendant.

The plaintiff argued that if the stay were not modified the plaintiff would have "the risk of inconsistent judgments ..." because after the individual defendants had their motion ruled upon, along would come the Debtor with a similar motion on similar grounds, and there might be a different result. Tr. 67. It was in that context that this Court said, "That's a fairly academic risk, isn't it?" and discussed the unlikelihood that Judge Shadur could be persuaded to change his mind. *Id.* The fact is that no judge is likely to change his mind about an issue once that judge has "reached a decision after full adversarial presentation and judicial consideration...." Judge Shadur Letter 2. It may be (as both counsel agreed) that Judge Shadur is particularly exemplary in that regard, as he is in so many others. But nobody at the hearing attempted to predict how Judge Shadur would rule on any issue, or otherwise attempt to read his mind. Everyone did agree only that once that mind is made up, it is, as it ought to be, difficult to change.

Of course, Judge Shadur is correct that a defendant in a securities case might have unique defenses, not available to other defendants in the same case. Indeed, that is a possibility in any multi-defendant litigation, regardless of the subject matter. But that point has nothing to do with the risk of "inconsistent judgments" that was under discussion. Obviously, that risk pertains to the possibility of different resolutions of the *same* issue, not the resolution of an issue unique to one party. The problem that may arise from any projected need to deal with the Debtor's unique defenses is delay, which is the issue this Court will address next. With respect to the allegation that the plaintiff faces a significant risk of inconsistent decisions, this Court made no error of law or fact, manifest or otherwise. That risk is minimal, if it exists at all.

The automatic stay almost always delays litigants. That, after all, is its purpose, and the reason they call it a "stay." Nevertheless, delay is usually undesirable. Deferring the award of a just remedy is not something to be done lightly. In this case, however, there are two other considerations that mitigate the consequences of the delay that will be suffered by the plaintiff. First, the delay is likely to be short, perhaps five or six months. The Debtor's announced intention is to have a plan of reorganization confirmed before the end of May. If that is done, and if there is still any reason to proceed with the securities case against the Debtor (more on that later), then the plaintiff will be free to do so. Before the plaintiff will be able to begin serious discovery in that case, the plaintiff must file an amended complaint; the individual defendants must file motions to dismiss it; those motions must be briefed; Judge Shadur must decide them; and, if he denies the motions, the individual defendants must answer the complaint. (If he grants the motions, the

plaintiff will have more to worry about than the automatic stay.) It is simply not likely that the plaintiff will be in a position to begin the bulk of his discovery before the end of May. When and if the Debtor re-joins the litigation, of course, there will be time and energy consumed getting it caught up. There will likely be a fresh motion to dismiss, which, as Judge Shadur points out, may raise fresh issues that will require more time. But it will not be necessary to defer or redo substantial discovery or any evidentiary hearings. In sum, the prejudice to the plaintiff that is likely to result from the delay caused by maintaining the automatic stay is limited by the likely short duration of that delay, combined with the present early stage of the securities class action.

The second consideration that mitigates the harm that may result from delay is that under § 510(b) the securities fraud claims are likely to be subordinated to creditor claims, and dealt with on the same priority as the shareholder interests. The plaintiff purports to represent a class of "purchasers of the common stock of Comdisco" and alleges violations of the securities laws. Section 510(b) subordinates "a claim .... for damages arising from the purchase or sale of [a security of the debtor]." [6] In the context of this case, application of that provision would result in the subordination of the plaintiff's class claim to all creditor claims, and put it on a parity with the shareholders.

The effect of that subordination is not possible to predict with certainty. But one very real possibility is that the plaintiff class claims will be discharged by the plan without any payment. That will happen if the confirmed plan makes no distribution at the equity level. In other words, if the reorganization value of the Debtor is insufficient to pay all of the $4 billion in claims (and if the creditors do not agree to a distribution at the equity level), then by operation of law the plaintiff's claims against the Debtor will be discharged without any possibility of a recovery.[7] If that were to happen, then all the time spent on those claims (including the district judge's time) would have been wasted. Delay, in that event, would be a benefit, not a cost.

In ruling on the motion to modify the stay, this Court said, "I don't regard the prejudice to the plaintiffs as substantial." Tr. 87. For the reasons discussed above, that finding does not reflect a manifest error of law or fact.

■ The plaintiff, however, also argues that the cost to the Debtor that would result from a limited modification of the stay would be minimal to the vanishing point. In his letter, Judge Shadur instructs this Court on the difference between a Rule 12(b)(6) motion and fact discovery, and the plaintiff and he argue that

---

**6.** The plaintiff has made no serious argument that his class's claims should not be subordinated. In his Reply Memorandum in support of the stay motion, the plaintiff made a frivolous argument that § 510(b) applies only to recision claims. There is ample law to refute that theory, which the plaintiff might have found had he looked. See, *e.g., In re Granite Partners, L.P.,* 208 B.R. 332 (Bankr.S.D.N.Y. 1997). Instead, the plaintiff chose to falsely accuse the Debtor's lawyers of misleading this Court by excising the same words this Court just excised in the quotation in the text. In fact, the Debtor is correct in its interpretation

of § 510(b), as this Court implicitly held at the hearing. See Tr. 80–82, 86. Since the plaintiff has offered no reason to believe otherwise, this Court will assume for purposes of this motion that the class's securities fraud claims will be subordinated to the shareholder level.

**7.** The confirmation of a plan of reorganization binds all creditors and discharges all preconfirmation debts, with exceptions not relevant here. § 1141(a),(d).

such a "legalistic" motion will not require a "significant diversion" of the debtor's resources. The plaintiff further suggests that the debtor should itemize the burden that such a motion would impose. These arguments imply that there is some per se rule that requires the stay to be modified if the debtor can not prove a burden beyond some threshold. Moreover, they wholly disregard the context in which the Debtor would be compelled to respond to an amended complaint. There is no such per se rule, and context does matter.

Of course the preparation of a motion to dismiss a complaint and a supporting memorandum require less client time than discovery, but that the burden may be measured in hours rather than days or weeks or months is not determinative. Nor need the Court take evidence on whether this matter would be the proverbial last straw. It is enough to know all the straws this debtor is already carrying and will have to carry in the immediate future. As of the date of this opinion there are more than 1,425 entries on the docket of this case. The debtor recently completed the $875 million sale of one of its businesses, only after intense litigation that required two weeks of around-the-clock discovery and three full days of trial time (from 8:00 a.m. until 8:00 p.m on one of those days), not to mention the considerable out-of-court time required for the complex auction and negotiations. In addition, the debtor was a party to a related anti-trust action that had to be resolved before the sale could be concluded. There is a lingering dispute, involving $25 million, concerning that sale. The Debtor is now involved in efforts to market its much more substantial leasing businesses, valued by the debtor in the billions. That has required for each business unit another set of complex auctions and negotiations that are in process, and certainly has the potential to require further significant litigation

that would have to be concluded on an expedited basis. In addition, if the debtor is to emerge from this bankruptcy in early 2002, as it has announced, it will very soon need to formulate, negotiate and document a plan of reorganization to deal with $4 billion in debt, the equity interests and the continuation of at least some of its business units. Given the divergent positions that have already been expressed by some of the parties, it is possible that there will be a contested confirmation hearing; if so, it is likely to be very substantial litigation in a very short time period. There are also myriad other matters requiring consistent attention, such as scores of executory contracts and leases that must be evaluated so the Debtor can decide whether to assume or reject them under § 365, and the many disputes that arise from that process; sales under § 363 of some of the Debtor's many assets that are not part of the business units being sold; and administrative matters, such as the employment under § 327 and compensation under §§ 328–31 of professionals for the Debtor and the official committees, which have already given rise to several significant issues. The Debtor must also maintain good communications with those committees, providing information as they may require. Then there are the daily requirements of operating a multi-national, multi-faceted, multi-billion-dollar enterprise, and doing so without violating any of the restrictions imposed by the bankruptcy code. All these matters, and all the other matters that arise from time to time in chapter 11 cases (such as motions to modify the automatic stay), require the attention of the debtor's executives, certainly including its legal officer.

There can be no doubt that this Debtor is extremely busy, and likely to get busier, with many tasks central to its reorganization, and therefore central to its future and

to the extent of any return to its stakeholders. These are the circumstances known to this Court, but perhaps not to Judge Shadur and the plaintiff, which is why this Court said "this motion is a good example [of] why Congress vests exclusive jurisdiction to modify the stay in the bankruptcy court. . . ." Tr. 85. Whatever the view from the 23rd floor of this courthouse, down here closer to street level it is clear that, absent a compelling reason, it would be irresponsible and subversive of the purpose of the automatic stay to allow any resources and attention of the Debtor to be diverted to other matters not directly related to its reorganization. Notwithstanding the inconvenience that the automatic stay may cause in the district court, no such compelling reason has been shown to exist.

When it decided the stay motion, this Court knew what the issues were. This Court indicated its understanding of the limited relief the plaintiff sought and that it would require only "a legal argument." The Court went on to say, however, that "framing that legal argument would involve at least the general counsel for the debtors, if not other people, in some activity of some significance, however much that may be. And at this point, I find that that's enough prejudice to satisfy me that this motion should not be granted." Tr 86. That finding, too, was not a manifest error of law or fact.

There is a last factor to be considered. The plaintiff argued in support of his stay motion that the Debtor and the bankruptcy estate would actually be benefitted by the limited modification because it would aid in the evaluation of the class claims for purposes of dealing with them in the plan. Nobody actually involved with this case seems to have agreed with that position. The Debtor ungratefully opposed the motion, the committees did not support it,

and this Court denied it. Nevertheless, Judge Shadur persists in advising that "lifting the stay to allow the mere filing of a consolidated complaint, followed by the testing of its legal sufficiency or insufficiency as against Comdisco, could really advance rather than [retard] the goal of developing a sound Chapter 11 plan." His reasoning is that his evaluation of the claims would give the parties and this Court "some informed sense of the existence or nonexistence of such liability. . . ." Judge Shadur Letter 3.

As noted above, the class claims will probably be subordinated to creditor claims and on a par with the shareholder interests. (The "probably" signifies that the issue is not directly before the Court and therefore is not definitively decided by this opinion. For that matter, no issue regarding the plan is before this Court, and none should be deemed decided by anything contained in this opinion.) If the confirmed plan makes no distribution to the classes at the equity level, the securities fraud claims will be discharged and the plaintiff and his fellow claimants will never recover anything from the Debtor, in this Court or any other. In that scenario, nobody would care about the merits of the plaintiff's claims.

Even if the plan does provide for a distribution at the equity level, it is not necessarily true that a prior evaluation of the securities claims against the Debtor by Judge Shadur will be helpful. The parties may agree on an allocation between the equity level classes, particularly if there turns out to be substantial overlap between the two classes (*i.e.,* if a significant number of plaintiff class members still own the stock of the Debtor, and are therefore also members of the shareholder class). Or the plan may provide that the distribution at the equity level be deferred until a final judgment on the class claims has

been entered (although that may be opposed by the equity committee). Or the district judge may grant the individual defendants' motions to dismiss on grounds indisputably applicable to the Debtor, or, if he denies those motions, it may turn out that the Debtor has no unique defense. In either of those circumstances, Judge Shadur's evaluation of the claims against the individual defendants would be as useful as if the evaluation dealt directly with the claims against the Debtor.

Although it is possible to hypothesize circumstances in which the district court's opinion of the legal sufficiency of the claim against the Debtor might be of some use, it is also true that even under those hypothetical circumstances it may not be. Section 502(c) allows this Court to estimate only contingent and unliquidated claims, but not claims that are merely disputed. See *In re Keenan,* 201 B.R. 263 (Bankr. S.D.Cal.1996). Cf. *In re Knight,* 55 F.3d 231, 235 (7th Cir.1995) (for purposes of debtor eligibility for chapter 13 under § 109(e), disputed claim is not necessarily contingent or unliquidated). An argument might be made that the Court has no power to estimate the plaintiff's claims, and that they must be fully adjudicated, if they are not settled. Of course, Judge Shadur's opinion might help settle the dispute, but many cases go on long after decisions on Rule 12(b)(6) motions before they are resolved. If allocation between the two equity-level classes of any distribution at that level must await a final judgment in the securities class action, then, as this Court observed in ruling on the stay motion, "no matter what I do, that litigation is not likely to be decided .... any time that makes any difference in the context of this case." Tr. 87.

In short, the value, if any, to this estate of an evaluation of the class claims against the Debtor is purely speculative. Once

again, this Court committed no manifest error when it considered this factor and found that it was not cause to modify the automatic stay.

Judge Shadur and the plaintiff are free to focus on a single tree; the bankruptcy code charges this Court with responsibility for the forest. Considering all the circumstances that have been presented to this Court, it committed no error, manifest or otherwise, when it denied the plaintiff's motion for a limited modification of the automatic stay. His present motion to reconsider will therefore also be denied.